The Shelbyville Water Company

*v.*

The People *ex rel.* A. M. Craddick, Collector.

*Filed at Springfield March 26, 1892.*

1. Taxation—*engines and boilers assessed as personal property.* Although engines and boilers permanently attached are a part of the realty to which they are attached, and may pass as such as between grantor and grantee, yet by statute (sec. 25 of the Revenue act) they are to be taken and treated, for purposes of assessment and taxation, as personal property.

2. Same—*electric light and water machinery, mains, wires, etc., taxed as personal property.* Machinery of a company in a building used for forcing water into mains, and also for furnishing electric light in a city, consisting of pumping engines, boilers, and engines for making electric light, and fixtures with which the mains and wires are attached, are to be assessed and taxed as personal property.

3. And when the water mains and electric wires are a part of the apparatus for the delivery of water and light to the people of a city, and the mains are laid under ground partly in the streets and the wires are attached to poles partly in such streets, they, too, will be treated as personalty for all purposes of taxation.

4. Same—*right of collector to amend his return as to delinquent taxes.* Where the collector charging personal taxes against realty neglects to state the cause of his failure to collect the same, and to make affidavit that the cause of delinquency noted on the tax book is true and correct, and of his diligence to collect such tax, the court, on application of the collector for judgment against such realty, may allow the collector to amend his return, and make and attach the proper affidavit showing the right to charge the personal tax on land of the delinquent tax-payer.

35—140 Ill.

5. SAME—*charging delinquent personal property tax against real estate.* The right of the collector to charge a person's personal tax upon his land is not confined to cases of removals or insolvency of the delinquent, but under sections 170 and 255 of the Revenue act, which are to be construed together, applies to all cases where the personal tax can not be made out of the personal property.

6. Where the collector's book shows a charge of unpaid personal property against particular parcels of land, it will be presumed that such charge became necessary because the tax could not be made of personal property.

7. SAME—*irregularities cured.* By section 191 of the Revenue law all mere irregularities in the proceedings for the levy and collection of taxes, not affecting the substantial justice of the tax, are cured, and rendered harmless.

APPEAL from the County Court of Shelby county; the Hon. TRUMAN E. AMES, Judge, presiding.

Mr. J. WILLIAM LLOYD, and Mr. WILLIAM C. KELLEY, for the appellant.

Mr. W. B. TOWNSEND, State's Attorney, and Messrs. MOULTON, CHAFEE & HEADEN, for the appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This is an appeal from a judgment of the County Court of Shelby County, rendered at the May Term, 1891, against delinquent lands, including certain lots and acre property belonging to the appellant Company. The Company appeared and filed objections, which were overruled, and exception was taken. Judgment was rendered against the lots of appellant in the original town of Shelbyville for a certain sum as personal property taxes, penalties and costs, and against ten acres of appellant in said county for a certain other sum as personal property taxes, penalties and costs. The two assessments of personal property taxes were made on the water mains and pipes and hydrants, and also upon the electric

wires and lamps and poles, of the appellant, a part of which are in school district No. 2, and a part in school district No. 1, the latter comprising the city of Shelbyville.

The appellant has erected upon its land, adjoining said city, a building and works, containing the necessary machinery for supplying the city with water, and for producing and furnishing electric light. The water mains and electric wires are connected with the machinery. The mains are embedded in the earth, and extend from the works for some distance on the company's land, and thence through the streets of the city by permission of its authorities under ordinances passed for that purpose. Fifty hydrants, standing each about three feet above the ground, are fixed to and form a part of the mains. The water is drawn by the machinery from a river, and forced by the engines into the mains and pipes.

The wires, also, extend through the city from the dynamo and power engine in the building. Attached to them are thirty electric lamps. The wires and the poles on which they are strung beyond the land of appellant, are also upon the streets of the city by permission of the authorities, expressed in city ordinances.

The first objection is, that these mains and wires are a part of the realty, and were, therefore, improperly assessed as personalty. By express provision of our Revenue Act, gas mains and pipes, laid in roads, streets or alleys are declared to be personal property, and are required to be listed and assessed as such. (Rev. Stat. chap. 120, sec. 16; 2 Starr & Cur. page 2034.) No such provision, however, exists in regard to water mains, or electric poles and wires.

There are authorities, which hold that the mains of a gas company are appurtenant to its lots, and are taxable as realty, unless it is otherwise provided by statute. (*The Capital City Gas Light Co.* v. *The Charter Oak Ins. Co.* 51 Iowa, 31; *Providence Gas Co.* v. *Thurber,* 2 R. I. 15.) Under the doctrine of such authorities, it would seem that water mains and elec-

tric wires should be assessed as part of the realty, where there is no statutory provision directing otherwise; and, in Iowa, such water mains have been held to be real estate, and treated as appurtenances to the water-works. (*Appeal of the Des-Moines Water Company*, 48 Iowa, 324.)

There are other authorities, however, which hold that gas mains in the streets of a city are personalty. In *The People* v. *Board of Assessors*, 39 N. Y. 81, it was said: "These mains, running under the streets of the city, not being erected upon or affixed to the relators' land, cannot be regarded as real estate, under the statute, for the purpose of taxation. The mains are not real estate, as that term is defined in the Statute regulating the assessment of taxes, and I do not think they can be held as fixtures under the common doctrine upon that subject." In *Memphis Gas-light Co.* v. *The State*, 6 Cold. 310, the Supreme Court of Tennessee say: "it is insisted, that the pipes used for conveying the gas manufactured to the consumers and laid down, not upon the land of the company, but through and under the public streets of the city, are not a part of the manufacturing establishment. Pipes laid through the streets of the city, in the manner above mentioned, by permission of the corporate authorities, do not become the property of the city, or a part of the realty. They are personal property, and the property of the company." So far as the application of this doctrine is concerned, there is no difference between the mains and the wires.

In this conflict of authority, we are inclined to hold that these mains and wires are personalty, as this view is in harmony with the spirit, if not the letter, of our statutes, and with the tone of our own decisions. In *Johnson, Collector* v. *Roberts*, 102 Ill. 655, it was claimed that certain machinery in a building had been improperly assessed as personal property, because the engines and boilers were permanently attached to and were a part of the realty; and we there held, that, although the engines and boilers would be regarded as permanent fix-

tures and a part of the realty at common law, and as between grantor and grantee, yet that the legislature has the power to declare personal property to be realty, and realty to be personal property, for the purposes of taxation; that it had changed the rule so far as the facts of that case were concerned; that the engines and boilers, though attached to the realty, were to be treated as personalty under the 25th section of the Revenue Act, which mentions "every steam engine, including boilers, and the value thereof," as the sixth item in the schedule of personal property. (2 Starr & Cur. page 2036.)

The evidence in the case at bar shows, that the machinery in appellant's building, used for forcing water into the mains and furnishing electric light to the city, "consists of two Worthington pumping engines, two tubular boilers, one New York Safety High Speed Power engine, and one Electric Dynamo and fixtures." The mains and wires, being directly connected with these engines and boilers, which are personal property for the purposes of taxation under the doctrine of the *Johnson* case, can as well be held to be a part of the machinery, as of the realty to which the machinery is attached. If they are a part of the engines and boilers, with which they are connected, they may, like such engines and boilers, be regarded as personal property for the purpose of taxation. In *Commonwealth.* v. *Lowell Gas Light Co.* 12 Allen, 75, it was held, that the gas mains and pipes, laid down in the streets for the purpose of distributing gas to the consumers, constituted a part of the machinery in operation at the gas works. So, also, in *Memphis Gas-light Co.* v. *The State, supra,* it was held, that the pipes were a part of the apparatus for the delivery of gas to the consumers; that the delivery was as much within the purpose of the creation of the gas company as the manufacture; that the apparatus for delivery was merely an extension and continuation of the apparatus for manufacture, and that both belonged to the manufacturing establishment. In the present case, the water mains and

electric wires are a part of the apparatus for the delivery of water and light to the inhabitants of the city, and, as such, constitute a part of the machinery, including the engines and boilers, which is located in appellant's building. We think, that the mains and wires were properly assessed as personal property.

The next objection filed in the court below is, that the said personal property taxes should not have been charged against the real estate, for the alleged reason that the town collector did not note in writing opposite the name of appellant "the cause of failure to collect the same," and did not make oath, and sign and enter upon the collector's book an affidavit, that the cause of delinquency noted was true and correct, and that such sums remained due and unpaid, and that he had used due diligence to collect the same. (Rev. Stat. chap. 120, sec. 170; 2 Starr & Cur. sec. 172, page 2078.) Upon the trial, the Court ordered the clerk to correct and supply the record; and thereupon the town collector was called, and entered upon his delinquent report or list, opposite appellant's name, and opposite each amount of the total personal taxes, and under the head of "Remarks," the following words: "Refused payment, and no available property on which to levy;" the town collector also made the oath, and attached to said list the affidavit, provided for in said section 170. The action of the Court in this regard was objected to, and exception taken. We think the Court was authorized to allow the record to be amended in the respect above indicated under the provisions of section 191 of the Revenue Act. (2 Starr & Cur. sec. 193, page 2087.) That section provides for amendments in judicial proceedings for the collection of taxes; and that no charge for any of said taxes shall be considered illegal on account of any irregularity in the tax lists; and that no informality not affecting the substantial justice of the tax shall vitiate or affect it; and that any irregularity in the tax lists, or any omission of any officer connected with the levying of

such taxes, may, in the discretion of the court, be corrected, supplied and made to conform to law, etc.

A strict construction of section 170 would lead to the conclusion, that the only causes of failure to collect the tax upon personal property which are contemplated by that section, are "removal" or "insolvency," or some "error in the tax book." Primarily, this section would seem to have special reference to the settlement of the town collector with the county collector. It is illogical to require, that the insolvency of a party charged with a personal property tax shall be a prerequisite to a charge of such tax upon his land. If he owns land, he is not insolvent. Section 255 of the Revenue Act provides, that "real property shall be liable for taxes levied on personal property, but the tax on personal property shall not be charged against real property, except in cases of removals, or *where said tax cannot be made out of the personal property.*" (2 Starr & Cur. sec. 257, page 2112.) Sections 170 and 255 should be construed together. The latter is broad enough to include other causes for a failure to collect the tax upon personal property, besides insolvency.

In the present case, the proof shows that the town collector made a demand upon appellant about February 1, 1891, for the payment of the taxes upon its personal property; that appellant made no objection to the taxes, nor denied its liability therefor, but asked for as much time as possible, and was given until March 20, 1891, promising that payment would be made at that time; that a second demand was made about March 20, and payment was refused. If it was not then too late to make a levy, it is doubtful whether it would have been advisable to levy upon the water mains under the streets and the electric wires over the streets, in view of the interest which the public had in both the water and the light thereby supplied. The books of the town and county collectors showed the amount of these personal taxes, and that they were unpaid, and showed the particular parcels of land against which

they were to be charged. Section 183 of the Revenue Act. provides, that, "when it becomes necessary to charge the tax on personal property against real property, the county collector shall select for that purpose some particular tract or lots of real property owned by the person owing such personal property tax," etc.     (2 Starr & Cur. sec. 185, page 2082.) The officer will be presumed to have done his duty.  (*Job* v. *Tebbetts,* 5 Gilm. 382.)  Inasmuch as the books of the collectors, when introduced in evidence by the company itself, showed the charge of unpaid personal property taxes against particular parcels of land, it will be presumed, that such charge had become necessary because the tax could not be made out of personal property.  Therefore, the amendment allowed by the court merely stated what the law presumed without an amendment.

Some other objections are made, but we do not deem them of sufficient importance to justify any further discussion.  A careful consideration of them has led us to the conclusion, that they have reference to such mere irregularities in the proceedings, as do not affect the substantial justice of the tax and, consequently, are cured by the provisions of said Section 191.

The judgment of the County Court is affirmed.

*Judgment affirmed.*