### PHILIP KNOPF, County Clerk, *et al.*

*v.*

### THE LAKE STREET ELEVATED RAILROAD COMPANY.*

*Opinion filed June 19, 1902.*

TAXES—*elevated railroads are "railroads," and not "street railways," for purpose of taxation.* Elevated railroads organized under the general law for incorporation of railroad companies are "railroads," and not "street railways," for purposes of taxation, and are subject to assessment by the State Board of Equalization the same as railroads, and not by the local assessor or board of review.

MAGRUDER, C. J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

EDWIN W. SIMS, County Attorney, and FRANK L. SHEPARD, Assistant County Attorney, for appellants.

CLARENCE A. KNIGHT, for appellee.

*With this case are decided No. 2459, *Knopf* v. *Metropolitan West Side Elevated Railroad Co.;* No. 2460, *Same* v. *South Side Elevated Railroad Co.;* No. 2461, *Same* v. *Northwestern Elevated Railroad Co.;* and No. 2462, *Same* v. *Union Elevated Railroad Co.*

Mr. JUSTICE CARTER delivered the opinion of the court:

The Lake Street Elevated Railroad Company, the Metropolitan West Side Elevated Railway Company, the Northwestern Elevated Railroad Company, the South Side Elevated Railroad Company and the Union Elevated Railroad Company, filed each its bill of complaint in the circuit court of Cook county against Philip Knopf, county clerk of said county, and others, as collectors, to enjoin Knopf, as such clerk, from extending upon the tax books of said county the assessments made by the board of review of Cook county for the year 1901, upon the "rolling stock; steel superstructure, tracks, rails, ties, railroad and electrical equipment and right of way, including stations and other buildings on its right of way," and to enjoin the collection of such taxes. The several cases were heard on demurrers to the bills. The demurrers were overruled and decrees entered for the complainants, as prayed in their respective bills. These appeals were taken by the defendants to this court, and as the question is the same in all, they will be considered together.

The bills show that the complainants were assessed on the same property by the State Board of Equalization, and the question is, which of the two boards has authority to make the assessment?—the complainants contending that the State board is the lawful authority, and that the assessment made by the board of review is without warrant of law, and is void. The solution of the question depends on the construction to be given to certain provisions of the Revenue law, and whether or not, within the meaning of that law, the complainants are railroad companies and their several roads railroads.

Section 15 of the Revenue act provides: "The personal property of street railroad, plank road, gravel road, turnpike or bridge companies, shall be listed and assessed in the county, town, district, village or city where the principal place of business is located. The

track, road or bridge shall be held to be personal property, and listed and assessed as such, in the town, district, village or city where the same is located or laid." (Hurd's Stat. 1899, p. 1396.) Sections 40 to 52, inclusive, provide for the assessment of the same character of property of railroads by the State Board of Equalization, and if the complainants are railroad companies in the general sense of that term, and the property assessed is "railroad track" and "rolling stock" of railroads, then the assessment made by the State board is the lawful one and that made by the board of review is unlawful and void.

It is settled law, and conceded, that for purposes of taxation the legislature may declare real estate to be personalty and personalty to be real estate. (*Shelbyville Water Co.* v. *People,* 140 Ill. 545; *Johnson* v. *Roberts,* 102 id. 655.) Hence no question can arise as to the validity of said section 15, nor as to the assessment of the several tracks as personal property if the complainants are street railroad companies. Said section 40 provides: "Every person, company or corporation owning, operating or constructing a railroad in this State, shall return sworn lists or schedules of the taxable property of such railroad, as hereinafter provided." (Hurd's Stat. 1899, p. 1401.) Section 41 provides for the making of such schedules, what they shall contain and when and where they shall be filed. Section 42 provides that the "right of way, including the superstructures of main, side or second tracks and turn-outs, and the station and improvements of the railroad company on such right of way, shall be held to be real estate for the purposes of taxation, and denominated 'railroad track,' and shall be so listed and valued," and then prescribes the manner in which it shall be described. Section 44 provides that the movable property of a railroad company shall, for the purposes of taxation, be held to be personal property and denominated "rolling stock." Section 46 provides for the assessment of personalty other than rolling stock

by local assessors. Other sections provide, among other things, for the making and return to the Auditor of Public Accounts, sworn schedules, first, of property denominated "railroad track;" and second, of "rolling stock." Section 50 makes it the duty of the Auditor, on the meeting of the State Board of Equalization, to lay before it the schedules of property so returned to him, and provides that the board shall assess the same; and section 109 provides that the said board shall assess the railroad property denominated "railroad track" and "rolling stock," and that such assessment shall be certified by the Auditor to the county clerks of the proper counties.

There were no elevated railroads in this State in 1872, when the Revenue act was passed, and it contains no specific mention of such roads. But in 1875 the General Assembly passed an act in regard to elevated ways or conveyors, (Hurd's Stat. 1899, p. 448,) the first section of which is as follows: "Any company which has been or shall be incorporated under the general laws of this State, for the purpose of constructing, maintaining and operating any elevated way or conveyor, shall state in its articles of incorporation the places from and to which it is intended to construct the proposed elevated way or conveyor. And any such company may organize and become incorporated under the provisions of chapter thirty-two (32) of the Revised Statutes of 1874, concerning corporations for pecuniary profit, and shall be subject to the provisions of the laws of this State applicable to such corporations." Other sections provide for obtaining real estate for right of way, for depots, stations and other necessary purposes, in the manner provided by the law of eminent domain, and confer power on such companies to construct their ways across or along streets and highways, etc., with the consent of the corporate authorities. And in 1883 another act was passed, providing that no such elevated railroad or elevated way should be constructed or maintained along any street

or alley except by permission of the city council or the trustees, granted upon a petition of the owners of more than one-half the lands fronting on such street or alley. (Hurd's Stat. 1899, p. 449.) There was also in force prior to 1899 the act of 1874, in regard to horse and dummy railroads.

If the appellees had been incorporated under any of these statutes other than the general Railroad law,— that is, the act of 1872, for the incorporation of railroads, —there would be much more reason for holding the property of appellees to be property of street railroad companies, or, at least, not to be the property of railroads, and for assessing it under said section 15 of the Revenue law, or under other sections not applicable to railroads. But the appellee companies were incorporated under said general Railroad act for the incorporation of railroads, and if the articles of incorporation, and the powers conferred by the act under which they were incorporated and which have been exercised by the companies, should be considered as the determining factors in the case, then appellees must be held to be railroad companies, and their railroad tracks and rolling stock held to be assessable only by the State Board of Equalization. If, however, these roads were practically confined to streets and highways and were used to facilitate travel on the same, and if the character of the property and the use to which it is put should be given controlling effect, then it would be assessable only by the local assessors, as street railroad property.

The appellants contend that the property in question is street railroad property, but whether strictly so or not, it is not railroad property, within the meaning of the Revenue law, for assessment by the State board. The argument is, that the jurisdiction of the local assessors is general, and embraces all property not specifically taken out of that jurisdiction by the statute, while the jurisdiction of the State board is special, and includes only such

persons and property as are specifically included by the express provisions of the statute. It will, of course, be admitted that if appellees are street railway companies, owning and operating their roads in the public streets, the assessment was properly made under section 15 by the local assessor; and it may be further conceded that, without regard to section 15, but under other provisions, the property would be assessable by the local authorities unless it falls within the class of property required by the statute to be assessed by the State board. In other words, it is the general rule that property must be assessed by the local assessor, and the State board can assess only such property as the statute specifically requires it to assess. It must therefore be admitted that unless the property in question falls within the class of property specifically required to be assessed by the State board it was properly assessed by the local board, whether it falls within the class of property mentioned in section 15 or not. We are of the opinion, however, that it does not fall within section 15 because the appellees are not street railroad companies. They are not incorporated nor organized as street railway companies, and are not confined, in constructing and operating their roads, to streets and highways, but may construct them wholly, or in such part as they choose, on their respective rights of way obtained by agreement or by condemnation under the law of eminent domain; and the bills show that these companies have to a considerable extent located and constructed their roads, and are now operating them, on such rights of way obtained by lease, purchase or condemnation, some of them to a less and some to a greater extent than upon and over public streets. Street railroad companies do not have this power, but are confined to the highways, except for short distances, where a divergence becomes a necessity in construction and operation. (*Harvey* v. *Aurora and Geneva Railway Co.* 174 Ill. 295.) It could hardly be said that a railroad com-

pany incorporated and authorized to construct a railroad from one point to another in Cook county, and which should construct a surface railroad through the city of Chicago on its own right of way obtained by contract or condemnation, would be a street railroad. Nor would the fact that for a part of the way its track was laid in the street necessarily make it a street railroad. If this be true, it would seem to be equally true of a railroad constructed and operated above the surface. It would not be a street railroad in either case. In *Lieberman* v. *Chicago Rapid Transit Railroad Co.* 141 Ill. 140, we held that a railroad company incorporated under the general Railroad act of 1872, with authority to construct a railroad, without qualification or limitation as to its character, is authorized to construct an elevated railroad. So it would seem that the fact that these railroads are elevated above the surface of the ground can have no weight in determining whether they are street railroads or not. As well said in 23 American and English Encyclopedia of Law, 958: "A street railway is directly ancillary to the uses of the street. It is a mode of travel closely allied to those in common use on the highway, and, as a matter of fact and common knowledge, is very much less an obstruction than an ordinary railroad." In so far as these roads are constructed and operated along the streets, facilitating local travel thereon, they certainly possess some of the characteristics of street railroads, but inasmuch as these companies are incorporated under the general Railroad law as railroads, with all the powers of the ordinary railroad company, and are neither by their charters nor in their construction and operation confined to highways for their rights of way, we are of the opinion that they cannot be classed as street railroads, nor the companies as street railroad companies, within the meaning of section 15 of the Railroad act.

Appellants refer to *Doane* v. *Lake Street Elevated Railroad Co.* 165 Ill. 510, and *Bond* v. *Pennsylvania Co.* 171 id.

508, as holding that roads of this character are street railroads. As applicable to the questions before the court in those cases, and which questions were entirely of a different character from the one now under consideration and involved private rights, the roads, so far as constructed in the street and used to facilitate local travel therein, were treated as street railroads. But here the question is, into what class does the general Revenue law place them for purposes of valuation and assessment for taxation? In other words, which of the assessing tribunals, the local or the State, has the power to make the assessment? We are unable to see how the decisions in those cases, or what was there said *arguendo*, conflict with the view that for purposes of valuation and assessment under the Revenue law the appellee companies should be regarded as railroad companies, and the property mentioned as "railroad track" and "rolling stock," as provided in those sections of the Revenue law relating to the listing and valuing of the property of railroads.

Our conclusion is, that the State Board of Equalization was the proper authority to make the assessment, and not the board of review or the board of assessors of Cook county, and that the decrees appealed from are correct. Said decrees will therefore be affirmed.

*Decree affirmed.*

Mr. CHIEF JUSTICE MAGRUDER, dissenting: I do not concur. These elevated railroads are all in one county, and do not run through more than one county. There is, therefore, no reason why they should not be assessed by the local assessor rather than by the State Board of Equalization. (*Ohio and Mississippi Railway Co.* v. *People*, 119 Ill. 207).