## Jacob P. Smith et al. v. City of Chicago.

1. DEDICATION—*Town Plat Insufficient to Create Statutory Dedication.*—A town plat upon which there is nothing to indicate by whom it was made, no acknowledgment, no certificate of a surveyor nor number of blocks and lots, is essentially defective and can not create a statutory dedication.

2. SAME—*Recording of Plat is an Offer to Dedicate.*—The recording of a plat is an offer to dedicate the streets to the public, and the effect of a subsequent conveyance of lots fronting on streets shown on the plat, with reference to the plat, has the effect of vesting in the grantee of such lots title to the center line of the street, subject to the public easement in the street.

3. SAME—*Of Streets in Subdivision—Acceptance of by City.*—Where a city takes possession of the pipes, hydrants, etc., in the streets of an annexed subdivision and connects them with its general water system, so as to form part thereof, and supplies water by means of such pipes, it accepts the common law dedication of the streets as public streets.

4. CONSTITUTIONAL LAW—*Taking a Private System of Water-works for Public Use.*—The taking by a city of a private system of water-works laid in the streets of a subdivision, upon its annexation to the city, and connecting it with its system of water-works, for the purpose of distributing water to the annexed territory, is a taking of private property for public use within the meaning of the constitution, and the owners are entitled to recover the value of the plant with interest from the date of taking.

5. PLEADING—*Submitting Case to Court on an Agreed Statement of Facts Waives Questions of Pleading.*—When parties submit their case to the court on an agreed statement of facts, all questions as to the formal pleadings are thereby waived, unless expressly reserved.

6. MUNICIPAL CORPORATIONS — *Private Water-works System in*

Smith v. City of Chicago.

*Streets* —The plaintiffs, owners of a tract of land, subdivided it into lots and streets and made a common law dedication of the latter, and constructed a private system of water-works through said streets. Afterward, upon annexation of the subdivision to the city, the latter assumed exclusive control of said system, and connected the same with its system of water-works. *Held*, that when the premises became annexed to the city, it did not acquire the fee of the streets but only the control of such streets as the public had, by user, accepted the dedication of prior to annexation, and such as, the public not having accepted the dedication of. it might accept as public streets, and is liable for the value of the water-works system.

Trover.—Error to the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge presiding. Heard in this court at the March term, 1902. Reversed and judgment entered in this court. Opinion filed March 19, 1903.

CHESTER FIREBAUGH and JOHN BARTON PAYNE, attorneys for plaintiffs in error.

Subject to an easement in favor of the public, the fee in the streets in which these pipes were placed has at all times remained in the plaintiff's trustee, and the plaintiff has been the sole beneficial owner thereof. The dedication of the streets did not comply with statutory requirements and can take effect only as common law dedication. Maywood Co. v. Village of Maywood, 118 Ill. 61; Starr & Curtis' Annotated Statutes, Chap. 109, Secs. 1, 2 and 3.

The fee remaining in the plaintiff's trustee, plaintiff had the right to lay these water pipes in its own soil, and by so doing did not give up the ownership thereof. Elliott on Roads and Streets, 518; Postal Telegraph Co. v. Eaton, 170 Ill. 513; Woodring v. Forks Township, 28 Pa. St. 355; Perley v. Chandler, 6 Mass. 454.

The annexation of these premises to the city of Chicago did not in any way affect plaintiff's right to the water-pipes in question. Sec. 221, Chap. 24, Starr & Curtis' Annotated Statutes; Wright v. City of Mt. Vernon, 60 N. Y. Suppl. 1017.

CHARLES M. WALKER, Corporation Counsel, and EDWIN WHITE MOORE, Assistant Corporation Counsel, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Plaintiffs in error were plaintiffs and defendant in error defendant in the trial court. The declaration is in trover. The cause was tried by the court, without a jury, on the following stipulation of facts:

"It is hereby stipulated and agreed between the respective parties to the above and foregoing suit, that the following facts are true and are admitted by both parties to the above suit to be true, as hereinafter set forth.

"1. That at all the various times in the declaration mentioned the plaintiffs constituted a voluntary association doing business as the West Pullman Land Association, under articles of agreement set out in the Exhibit 'X' attached hereto and made a part hereof, and that the plaintiffs and The American Trust and Savings Bank at all said times sustained to each other the relation of *cestui que trust* and trustee, the latter at all said times holding in fee simple, in trust as aforesaid for the plaintiffs, the northeast quarter of section twenty-nine (29), township thirty-seven (37) north, range fourteen (14) east of the third principal meridian, in Cook county, Illinois, except as conveyed as hereinafter stated. the agreement in relation to said trust being also contained in the said Exhibit 'X' hereto attached; that said premises above described, until their annexation to the city of Chicago hereinafter mentioned and admitted, did not form any part of any incorporated village, town or city, but until said annexation were a part of the unorganized township of Calumet, in said county of Cook.

"2. That on August 22, 1892, a subdivision of all of said premises herein described was made and a plat thereof duly filed and recorded in the recorder's office of Cook county, Illinois, as first addition to West Pullman, in book 55 of plats, at page 42; which said map or plat was in metes and bounds, lines, words and figures as follows:

Smith v. City of Chicago.

"That prior to August 22, 1892, plaintiffs caused certain streets, shown upon the said plat aforesaid, to be opened. upon and through the said premises, which said streets were and are used generally as streets by the public.

"3. That subsequent to said August 22, 1892, and prior to February 25, 1895, the plaintiffs caused 4,614 lineal feet of six-inch water-pipe and 2,886 lineal feet of four-inch water pipe to be laid and placed beneath the surface of said premises within and along the streets so marked out as aforesaid, the location of said pipes being shown by a blue line on the said map or plat aforesaid; that the entire cost of said pipes was $6,507.54 (of which approximately the sum of $2,000 was for cost of laying), which sum was also the reasonable, fair market value of all of said pipes at all the times and places herein mentioned; that prior to the commencement of this suit, the defendant caused a

proper survey of all of said premises and said pipes aforesaid to be made, and it is shown by the said survey that a permanent annual revenue of ten cents per lineal foot has been for a long time previous to the commencement of this suit, and still is being derived by the defendant from the said water-pipe so placed by the plaintiffs as aforesaid, and that there was at all times in the declaration mentioned, and still is, in full force and effect a certain ordinance of the city council of the defendant in the words and figures as follows, to wit:

"'1669.  Cost Advanced by Property Owners.—The commissioner of public works may extend water mains, where the owners of the property or persons desiring such extension shall advance and pay into the city treasury a sum of money equal to the entire cost thereof; and whenever upon a proper survey it is shown that a permanent annual revenue of ten cents per lineal foot is being derived from said water mains, then said money so advanced as aforesaid shall be repaid to the person or persons so advancing the same; provided, however, if the money so advanced is not paid back within two years, interest at the rate of five per cent per annum shall be allowed after the expiration of said two years, until paid.'

"That there was also at the same time with the laying and placing of said pipes aforesaid, placed and laid in connection with the same, twenty-two double hydrants, one single hydrant, four 6-inch valves, and two 4-inch valves; that the cost of all of said hydrants and valves was $960, which sum was also at all the times and places herein mentioned the reasonable fair market value thereof.

"4.    That at all the times in the declaration mentioned, the defendant was owning and operating a system of water-works, pursuant to law, authorizing cities, incorporated towns and villages to construct and maintain waterworks supplying its inhabitants with water for hire, at all said times having its water-pipes extending in and along the various streets of the defendant; that on July 14, 1892, plaintiffs caused a six-inch Hersey meter to be installed at the corner of Halsted and One Hundred and Twentieth streets, upon the western boundary line of the defendant, said meter being connected on its west side with the eastern terminus of the said water-pipes so laid and placed by the plaintiffs aforesaid, and said meter being connected on its eastern side with the system of water-pipes or water-works then and there owned and operated by the defendant as aforesaid; that until the defendant

took possession of the said pipes laid and placed by the plaintiffs as herein mentioned, the plaintiffs received from the defendant, and the defendant supplied to the plaintiffs, at and through the said Hersey meter so placed as aforesaid, water for the supply of consumers of the same at other termini of said pipes, including the persons to whom conveyances of lots and tracts of land in said subdivision were made; that monthly readings of said Hersey meter were regularly made during all of the period from the time of the installation of said Hersey meter as aforesaid until the same was removed by the defendant, as herein mentioned, and the plaintiffs regularly paid the defendant for all of the water passing through the said meter, according to the monthly readings thereof; that the plaintiffs, during all of said times, regularly collected their pay for said water from the consumers thereof, by means of meters placed at other termini of said pipes so laid and placed by the plaintiffs as aforesaid; that the plaintiffs hired the defendant to install the said Hersey meter aforesaid, paying the defendant therefor $673.59, which sum was also the reasonable, fair, market value thereof, at all the times herein mentioned—the cost of said meter being $490, and the cost of putting the same in being $183.59.

"5.    That on January 19, 1896, the defendant took from the possession and control of the plaintiffs, and carried away and converted to its own use, the said Hersey meter so paid for by the plaintiffs as aforesaid, and then and there took the same from the plaintiffs' possession and control, and assumed exclusive control of the said pipes and said appurtenances thereunto belonging, and then and there connected the said pipes so laid and placed by the plaintiffs as aforesaid, with its system of water-works then and there operated as aforesaid by the defendant, and then and there made all of said pipes and the hydrants and valves connected therewith and the said Hersey meter as aforesaid, a permanent part of its said system of water-works aforesaid, and ever since said time has used and operated the same as a part of its said system, and derived ever since said time a revenue therefrom of ten cents per lineal foot for all of said pipes so laid and placed by the plaintiffs herein, as hereinbefore stated.

"That on February 25, 1895, such proceedings were had that all of said premises herein described were duly annexed to and became a part of the city of Chicago, defendant herein, and still so remain.

"6.    That the title to all of the real estate herein described

continued to be, at all of the times herein mentioned, and still is, in the American Trust and Savings Bank, in trust for the plaintiffs herein, except such lots or parcels or tracts thereof which are marked upon the said plat or map hereinbefore mentioned as conveyed; that said lots or tracts so marked conveyed on the said map or plat were conveyed to other persons than the plaintiffs herein, prior to said annexation.

"7. At the time when said pipes were laid and from then until the present time the indebtedness of the city of Chicago has been greater that the amount of five per cent (5%) of the value of the taxable property in said city as ascertained by the respective annual assessments for state and county taxes; that is to say, the city of Chicago has been indebted beyond the limit fixed by article IX, section 12, of the state constitution.

" Testimony additional to the facts hereinbefore admitted may be introduced upon the trial of this cause by either party.

" The foregoing admissions of facts are subject to any objection by either party to their materiality or relevancy to any issue in this cause; and exceptions are by leave of court hereby preserved to each party to the above admitted facts."

Exhibit " X," referred to in the stipulation, is a document of date November 6, 1891, entitled, " Indenture and Articles of Agreement of the Pullman Land Association " between certain named persons and the American Trust and Savings Bank of Chicago, the legal effect of which is mentioned in paragraph 6 of the stipulation. No question is raised with regard to this exhibit, and we deem further reference to it unnecessary. Counsel for defendant in error say, in their argument: " The controlling question in this case is, whether the pipes were real estate or personal property," and their argument is mainly directed to a discussion of that question.

Plaintiffs being the equitable owners of the land described in the stipulation, the legal title to which was vested in the American Trust and Savings Bank as trustee, the subdivision shown in the stipulation was made August 22, 1892. Prior to the making of the subdivision the plaintiffs had caused certain of the streets shown on the

plat of the subdivision to be opened through the premises, which streets have been in general use by the public. There is nothing in the plat to indicate by whom it was made; no acknowledgment, no certificate of a surveyor, no numbers of blocks and lots; in short, none of the things required by the statute as necessary to a statutory dedication. There was, therefore, no such dedication as would operate to divest the American Trust and Savings Bank, plaintiffs' trustee, of the title to the ground shown as streets on the plat. Thomas v. Eckard, 88 Ill. 593; Village. v. Miller, 161 Ib. 210.

The recording of the plat was an offer to dedicate the streets to the public (Village v. Miller, *supra*), and the effect of a subsequent conveyance of lots fronting on streets shown on the plat, with reference to the plat, had the effect of vesting in the grantee of such lots title to the center line of the street, subject to the public easement in the street. Thompson v. Maloney, 199 Ill. 276.

After August 22, 1892, when the plat was recorded, and prior to February 25, 1895, the date of the annexation to the city of the premises in question, plaintiffs placed in the streets water-pipes and hydrants, and July 14, 1892, caused a Hersey meter to be installed on the western boundary of the premises, and connected on the eastern side of said premises with the system of pipes of the defendant. It is admitted in paragraph 5 of the stipulation that the defendant, January 19, 1896, took possession of, carried away and converted to its own use the Hersey meter, and assumed exclusive control of said pipes and the appurtenances thereto belonging, and connected the same with its system of waterworks, and made the same and said Hersey meter a permanent part of its water-works system, and has ever since derived a revenue therefrom.

When the premises in question became annexed to the city of Chicago, the city did not acquire the fee of the streets. The utmost that it could acquire by such annexation was the control of such streets as the public had, by user, accepted the dedication of prior to annexation, and such as,

the public not having accepted the dedication of, it might accept as public streets.

We are of opinion that defendant, by taking possession of the pipes, hydrants, etc., in. the streets, and connecting them with its general water system, so as to form a part thereof, and supplying water by means of such pipes, accepted the common law dedication of the streets,. as public streets. It appears from paragraph 4 of the stipulation that prior to February 25, 1895, when annexation took place, and after that date, and until January, 1896, defendant treated the ' water system of the plaintiffs as their property. During nearly one year after annexation, defendant furnished to the plaintiffs water, through the Hersey meter, for distribution to consumers on plaintiffs' premises, by means of their water system, charging plaintiffs for the water so furnished. There can be no question that if the city owned the water system of the plaintiffs, it would own it as personalty, and on the hypothesis that defendant does not own it, and that it should acquire it by purchase, or by paying to the plaintiffs the value thereof, it would be personalty of the city, and not realty. See cases cited in Shelbyville Water Co. v. The People, 140 Ill. 545, 548. If realty when owned by plaintiffs, we can not perceive how the pipes could become personalty by mere transfer to the city, without removal.

In Shelbyville Water Co. v. The People, *supra*, the question before the court was, whether the water mains of the water company, laid in the public streets of a city by permission of the city authorities, should be taxed as real or personal property. The statute did not provide whether they should be regarded as personal, or real property, for the purpose of taxation. The court held that the mains were personal property for the purpose of taxation. In the present case, the pipes were not laid in the streets by permission of the defendant, but were so laid before annexation, and when plaintiffs had legal right to place them in the streets, and annexation took place subject to the legal rights of the plaintiffs. Wright v. City of Mount Vernon, 60 N. Y. Supp. 1017.

In Dodge City Water & Light Co. v. Alfalfa Land & Irrigation Co., 64 Kan. 247, decided in January, 1902, it appeared that a person owning the water works system in subdivided land near to Dodge City, sold the water works system, including a pipe in one of the streets, to the plaintiff in error. Subsequently the same person sold to the defendant in error the land in which the pipe, which constituted a part of the water works system, was laid. After this conveyance, plaintiff in error removed the pipe, for the purpose of making another connection, and the defendant in error brought replevin for the pipe. The court held that the pipe was personalty and did not pass by the conveyance of the land to defendant in error, and that replevin would not lie. There is no controversy in the present case between any party to whom a lot was conveyed by plaintiffs or their trustee and the city, or between any such lot owner and the plaintiffs. The plaintiffs' water works system having been constructed for the benefit of the entire subdivision, we are of opinion that the conveyance of a lot fronting on a street in which the pipe is laid, would not transfer to the grantee of the lot any title to the pipe.

Even if the pipes, etc., should be deemed realty, the city has no title to them, for the reason that no title to the realty became vested in the city, either by acceptance of the common law dedication, or by virtue of annexation. But counsel for defendant contend that the pipes are realty, that they are fixtures, and therefore trover will not lie. We think the fifth paragraph of the stipulation, wherein it is admitted that "on January 10, 1896, the defendant took from the possession and control of the plaintiffs, and carried away and converted to its own use, the said Hersey meter, so paid for by the plaintiffs as aforesaid, and then and there took the same from the plaintiffs' possession and control, and assumed exclusive control of the said pipes and appurtenances thereto belonging," etc., is a sufficient answer to this contention. However, it is too late to raise any question as to the pleadings. When parties submit their case to the court on an agreed statement of facts, all ques-

tions as to the formal pleadings are thereby waived, unless expressly reserved. Ellsworth v. Brewer, 11 Pick. 316; Scudder v. Worster, 11 Cush. 573; Miner v. Coburn, 4 Allen, 136; Brettun v. Fox, 100 Mass. 234; Kimball v. Preston, 2 Gray, 567.

The stipulation contains no reservation of any question in respect to the pleadings. Thus the court was left free to determine the cause in accordance with law and justice, without regard to the pleadings, and to render such judgment as might be rendered on the agreed facts in any form of action.

The constitution provides, "Private property shall not be taken or damaged for public use without just compensation." The taking by the defendant of the property in question, and connecting it with its system of waterworks, for the purpose of distributing water to the annexed territory, was a taking for public use. This is a suit for compensation for the property so taken; and to hold that the city need not make compensation would be directly contrary to the constitutional provision cited.

In Wright v. City of Mount Vernon, 60 N. Y. Supp. 1017, Wright, the plaintiff, owned certain farm land which he subdivided into lots, streets, avenues and alleys, placed on record a plat of the subdivision, and so acted as to dedicate to the public the streets, avenues and alleys shown on the plat. He also sold to individual purchasers some of the lots fronting on the avenues or streets. He constructed through three of the streets private sewers or drains at an expense of $6,402.12. Subsequently, the city of Mt. Vernon was incorporated and included within its territorial limits the plaintiff's subdivision, and the city undertook to construct a trunk sewer or drain in the streets in which the plaintiff's private sewers were, and, in so doing, removed or rendered useless the private sewers of the plaintiff. Plaintiff sued the city in trespass for damages. The referee to whom the cause was referred dismissed the complaint on the ground that the streets had been dedicated to and accepted by the public. But the Supreme Court reversed this decision, saying, among other things:

" That drain or sewer, constructed, as we may assume, for the accommodation of those who should purchase the lots along these streets or avenues, became property which the defendant had no right to take or destroy without compensation to the owner. This is clearly the doctrine of City of Buffalo v. Pratt, 131 N. Y. 293, 299, 30 N. E. 233, and is the only conclusion consistent with the constitutional provision which forbids taking private property for public use without just compensation."

In the present case the learned judge of the trial court allowed, as compensation or damages, only the value of the Hersey meter, with interest. We are of opinion that the plaintiffs are entitled to recover the value of their waterworks plant or system, as such value is agreed on by the parties in paragraphs three and four of the stipulation, with interest from January 19, 1896, the date of the taking. In Phillips v. South Park Commissioners, 119 Ill. 626, 645, the court held that the owner of land which the commissioners took possession of for part of a public park, before paying therefor the price previously agreed on, was entitled to interest on the agreed price from the time the commissioners took possession.

Counsel for defendant have assigned cross-errors, which we think sufficiently disposed of by what has been said. It is agreed by the parties that the values stated in paragraphs three and four of the stipulation were the reasonable and fair market values of the different parts of the plaintiffs' water plant, at all times and places mentioned in the stipulation. The sum of such values is $8,141.13. The judgment will be reversed and judgment will be entered here for the sum of $8,141.13, and interest thereon at the rate of five per cent per annum, from January 19, 1896, to the present date.