JENNIE D. HARVEY *et al.*

*v.*

THE AURORA AND GENEVA RAILWAY COMPANY.

*Opinion filed July 22, 1898.*

1. BILLS OF EXCEPTION—*to preserve question of right to condemn, bill need not contain evidence before jury.*  The question of the petitioner's right to condemn is properly preserved by a bill of exceptions containing the motion to dismiss, affidavits in support thereof, the court's ruling thereon and the exception taken, and it is not necessary that the bill contain the evidence before the jury on the matter of damages where the amount allowed is not questioned.

2. PRACTICE—*filing a cross-petition to assess damages does not waive error in denying motion to dismiss.*  Error in denying a motion to dismiss a condemnation petition for want of power in the petitioner to condemn, is not waived by the defendant's filing a cross-petition to assess damages and proceeding to trial after excepting to the ruling of the court.

3. EMINENT DOMAIN—*the right to condemn is a question of law for the court.*  The right of the petitioner to condemn is a question of law for the court to determine upon the filing of a motion to dismiss the petition for want of power, and upon the denial of the motion the only question for the jury is the amount of compensation.

4. SAME—*statutes conferring powers of eminent domain are strictly construed.*  The appropriation of private property by condemnation is an exercise of sovereign power, and statutes conferring that power, being in derogation of the common law, must be strictly construed and the exercise of the right kept in strict conformity to the power conferred.

5. SAME—*eminent domain powers of street and steam railroads are not the same.*  Street, horse and dummy railroads do not possess the same powers of eminent domain as are given by statutes to railroads organized under the act relating to railroad companies.

6. SAME—*statutory authority for condemnation by street railway.*  A street railway organized under the general Incorporation act of 1872 has no power, under that act, to condemn private property, the only power in that regard being conferred by the Horse and Dummy Railroads act of 1874.  (Rev. Stat. 1874, p. 571.)

7. SAME—*limits of street railway company's power to condemn.*  Under the Horse and Dummy Railroads act of 1874, a street, horse or dummy railway company may only condemn such private property as is necessary for side-tracks, station grounds, etc., or, in case of an obstruction, may condemn a right of way around the same, returning again to the street or highway.  (PHILLIPS, J., dissenting.)

174  295
178  478

174  295
184  431
184  434

174  295
s186  284

174  295
191  ³644
f98a  ⁶350

174  295
197  ⁵217

174  295
202  ⁴368
104a  ⁵536

174  295
205  ⁷168

174  295
208  ⁸423

174  295
210  ⁵623

8. SAME—*street railway cannot leave highway without reason and condemn right of way.* A street railway cannot, without reason, abandon the highway on which it is authorized to lay its road and condemn a right of way over private property. (PHILLIPS, J., dissenting.)

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. GEORGE W. BROWN, Judge, presiding.

R. N. BOTSFORD, C. F. IRWIN, and E. O. BROWN, for plaintiffs in error:

The appropriation of private property through the right of eminent domain is an extreme exercise of sovereign power, and the construction given to statutes allowing it is always *strictissimi juris. Mitchell* v. *Railroad and Coal Co.* 68 Ill. 286; *Ligare* v. *Chicago,* 139 id. 46; *Railroad Co.* v. *Galt,* 133 id. 657; *Railroad Co.* v. *Wiltse,* 116 id. 449; *Pittsburg Junction Co.'s Appeal,* 122 Pa. St. 531; Lewis on Eminent Domain, 600; Cooley's Const. Lim. 540.

The charter or authority, statutory or otherwise, under which a corporation seeks to justify such appropriation is always to be construed most strictly against the power claimed in this regard.    Cooley's Const. Lim. 374; *Pittsburg Junction Co.'s Appeal,* 122 Pa. St. 531; *Currier* v. *Railroad Co.* 11 Ohio St. 228; *Miami Coal Co.* v. *Wigton,* 19 id. 560.

"Horse and dummy" railroads are synonymous with "street railroads." *Wiggins Ferry Co.* v. *Railway Co.* 107 Ill. 450; Laws of 1897, (Bradwell's ed.) p. 176.

A street railway is an incident of the street, and its main purpose is to facilitate the use of the street.    *Canastota Knife Co.* v. *Tramway Co.* 36 Atl. Rep. 1109; *Railroad Co.* v. *Railway Co.* 2 Duv. 175; *In re South Beach Railroad Co.* 119 N.Y. 141; *Rahn Township* v. *Railway Co.* 167 Pa. St. 84; *Williams* v. *Railway Co.* 41 Fed. Rep. 556.

The petition was not only defective in not stating facts showing the necessity of this exercise of the right of eminent domain as incidental to street railway, but it made no reference to the articles of incorporation.    This

is necessary, and the petition should have been dismissed for want of it. *Railroad Co.* v. *Railroad Co.* 149 Ill. 272.

The right to condemn must clearly appear on the face of the petition or the court has no jurisdiction. *Smith* v. *Railroad Co.* 105 Ill. 511; *Reed* v. *Railway Co.* 126 id. 48; *Tudor* v. *Rapid Transit Co.* 154 id. 129; *Railway Co.* v. *Galt*, 133 id. 657.

A. J. HOPKINS, F. H. THATCHER, and F. A. DOLPH, for defendant in error:

There is no bill of exceptions showing all the evidence up to and including the final decision. *Henry* v. *Halloway*, 78 Ill. 356.

The court below had the right to consider any evidence offered during the progress of the trial that bore upon the questions raised on the motion to dismiss. *Ward* v. *Railroad Co.* 119 Ill. 287; *Railroad Co.* v. *Railroad Co.* 149 id. 272; *Railway Co.* v. *Hawk*, 121 id. 259.

The motion of plaintiffs in error to dismiss the petition for condemnation is in the nature of a demurrer to the petition. *Emerson* v. *Railroad Co.* 75 Ill. 176.

Plaintiffs in error abandoned their right to question the action of the court in overruling the motion to dismiss by filing cross-petitions contesting on the merits, and not renewing their objection by motion for new trial, motion in arrest or by objection and exception to the final order. *Ward* v. *Railway Co.* 119 Ill. 287; *Lieberman* v. *Rapid Transit Railway Co.* 141 id. 140; *Velie* v. *Railway Co.* 140 id. 59; *Towing Co.* v. *Dandelin*, 143 id. 412; *Grimes* v. *Hilliary*, 150 id. 144; *Railroad Co.* v. *Richards*, 152 id. 71.

Plaintiffs in error not having objected and excepted to the final order after having participated in a trial on the merits, cannot question the record in this court. *Dean* v. *Lowry*, 44 Ill. App. 302; *Force Manf. Co.* v. *Horton*, 74 Ill. 310; *Railroad Co.* v. *O'Keefe*, 154 id. 508; *Frank* v. *Heaton*, 56 Ill. App. 227; *Griffith* v. *Welch*, 32 id. 396; *Condon* v. *Churchman*, 32 id. 319; *Bernhard* v. *Brown*, 31 id. 385.

By not objecting and excepting to the entry of the final order they must be presumed to have acquiesced therein. *Stern* v. *People*, 96 Ill. 475; *Pottle* v. *McWorter*, 13 id. 454;, *Barton* v. *Harris*, 39 Ill. App. 106.

The abstract in this case fails to show an exception to the ruling of the court in overruling the motion to dismiss the petition, and this court will not look to the record. *Railway Co.* v. *Wolf*, 137 Ill. 360; *Jesselson* v. *Griswold*, 69 Ill. App. 158; *Rapid Transit Co.* v. *Lackman*, 62 id. 437; *Flaningham* v. *Hogue*, 59 id. 315; *Parry* v. *Arnold*, 33 id. 622.

The abstract also fails to show the bill of exceptions contains all the evidence bearing on the question of the motion to dismiss, and this court will in such case affirm. *Gilbert* v. *Kuppenheimer*, 67 Ill. App. 251; *Railway Co.* v. *Wolf*, 137 Ill. 360; *Rapid Transit Co.* v. *Lackman*, 62 Ill. App. 437; *Novak* v. *Vypomocny Ass.* 68 id. 682; *Coquard* v. *Linseed Oil Co.* 67 id. 20; *Leverny* v. *Elder*, 65 id. 80.

The exercise of the right of eminent domain is a legislative and political question, and not judicial. *Railroad Co.* v. *Lake*, 71 Ill. 333; *Scholl* v. *Coal Co.* 118 id. 427; *Railroad Co.,* v. *Wiltse*, 116 id. 449; *Smith* v. *Railroad Co.* 105 id. 511; *Towing Co.* v. *Hyde Park*, 75 id. 371; *Railway Co.* v. *Railway Co.* 97 id. 506.

Courts can only inquire whether the proposed use is public or whether the proposed appropriation is necessary for public purposes, and can only interfere when the use is clearly an abuse of such public purposes. *Railroad Co.* v. *Lake*, 71 Ill. 333; *Tedens* v. *Sanitary District*, 149 id. 91; *Smith* v. *Railway Co.* 105 id. 515.

The party condemning determines for itself the necessity for and location of its route. *Railroad Co.* v. *Lake*, 71 Ill. 333; *Tedens* v. *Sanitary District*, 149 id. 91; *Smith* v. *Railway Co.* 105 id. 515; *Heacock* v. *Hosmer*, 109 id. 245; *Towing Co.* v. *Hyde Park*, 75 id. 371.

By filing a cross-petition asking to have damages assessed, defendant admits petitioner may exercise the right of eminent domain. *Ward* v. *Railroad Co.* 119 Ill. 292.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The Aurora and Geneva Railway Company, the defendant in error, was organized under the general Incorporation law of the State, entitled "An act concerning corporations," approved April 18, 1872.   In the application to become incorporated the purposes for which the corporation was organized are stated as follows: "The object for which it is formed is to build, construct, maintain and operate street railways, horse and dummy railroads and tram-ways in the county of Kane, in the State of Illinois, to be operated by electricity or by any other motive power excepting steam, for the purpose of carrying passengers, express matter, mail and baggage; also for the purpose of generating and supplying others with electricity, in any form, for power, heat, light and for any other purpose."

The certificate of organization bears date July 29, 1896, and the purpose of the corporation was to construct a street railroad from Aurora to Geneva, the county seat of Kane county.   Soon after the organization of the company it constructed an electric street railway over certain public streets in Aurora and along the public highway from Aurora to Batavia, which was about two-thirds of the distance from Aurora to Geneva.   On the 8th day of September, 1896, defendant in error petitioned the board of supervisors of Kane county to grant to it, and to its successors and assigns, for the period of twenty years, the right to lay down, construct, maintain and operate during said time its railway and tracks, with necessary sidings, appurtenances, poles, wires and other equipments, for the purpose of operating its railway and carrying out the purposes of its incorporation in, upon and along that part of the public highway in the townships of Batavia and Geneva, in said Kane county, Illinois, which runs along the westerly bank of Fox river, extending from a point on said highway connecting with Batavia

avenue, at the northerly city limits of the city of Batavia, to the southerly city limits of the city of Geneva. The board of supervisors, after due consideration, granted the prayer of the petition. From the northern limits of the city of Batavia the railway company proceeded to construct its street railway along the highway, the use of which was thus granted to it by the supervisors of Kane county for the distance of about one-quarter of a mile, to a point less than one thousand feet south of where the right of way of the Chicago and Northwestern Railway Company crosses the said highway. At this point the managers of the road determined to deflect from the highway, pass under the Northwestern railway, and construct the road over private property from the point indicated to near the terminus of the road,—a distance of over one mile. Under this arrangement the managers undertook to leave the highway altogether and run over private property along the banks of Fox river, which lies at a distance east of Batavia avenue varying from eight hundred to fifteen hundred feet.

The railway company, not being able to procure land for right of way from the owners, filed a petition in the circuit court of Kane county to condemn a strip fifty feet in width and about a mile and a half in length over private property, claiming the right to do so under "An act in regard to Horse and Dummy Railroads" (Rev. Stat. chap. 66,) and the Eminent Domain act. (Rev. Stat. chap. 47.) The plaintiffs in error, land owners, appeared, and entered a motion, supported by affidavits, to dismiss the petition filed against them. The motion was predicated on the ground that unlimited power was not conferred on railway companies incorporated under the general Incorporation act as horse or dummy railroads, but that the power of condemnation which is given by the Horse and Dummy act is purely ancillary and incidental to the proper purposes of a street railway. Thus it was contended that the power given to condemn might properly

be exercised by a street railway when it became necessary to take private property in order to render the use of the highway practicable and efficient,—when, for example, power houses, switches or turn-outs demanded such use, or when some practically insurmountable obstacle necessitated a slight deflection from and return to such highway,—but that it could not be exercised for the purpose of enabling a street railway to cease to be a street railway; that it could not, in other words, be exercised, as in the case at bar was attempted to be done, to enable the road to leave the highway over which it had the privilege of going, between two points a mile and a quarter apart, and to make for that mile and a quarter an exclusive right of way for itself over the private estates of individuals.   On the other hand, the petitioning railway company asserted that right, and claimed that power was given to it by the Horse and Dummy act to select its route over private property and condemn the lands so selected.

The court denied the motion to dismiss the petition. Plaintiffs in error excepted, and prepared a bill of exceptions containing the motion and the affidavits in its report, which was signed and sealed by the court. Cross-petitions were then filed by the plaintiffs in error, and on a hearing before the court and a jury damages were awarded for the lands taken, and plaintiffs in error sued out this writ of error.

Before proceeding to a consideration of the main question in the case, several technical questions which have been raised by defendant in error may properly be considered here.

It is said, first, the abstract fails to show that exceptions were preserved to the ruling of the court in denying the motion to dismiss the petition; and second, that the abstract fails to show that the bill of exceptions contains the statement that the affidavits set out in the bill of exceptions were all the evidence heard and considered

by the court on the motion.   The defects mentioned are mere omissions in the abstract, which plaintiffs in error had the right to correct by an amendment to the abstract, and which they asked leave to make upon a discovery of the omission.

It is also contended that the record is incomplete, for the reason no bill of exceptions was taken at the conclusion of the trial, upon the rendition of final judgment, showing the evidence heard on the trial relating to the issue involved on the motion to dismiss the petition.   On the trial before the jury no question could be raised in regard to the right of petitioner to take private property for railroad purposes.   That was a question which was not before the jury, and had any evidence been offered bearing on that question it would no doubt have been excluded.   The only question before the jury was the amount of damages or compensation to be allowed each owner for lands taken or damaged.   Plaintiffs in error do not call in question or controvert in any manner the finding of the jury or the judgment of the court on the finding.   There was therefore no necessity for preserving the evidence heard on the trial in a bill of exceptions. Whether the petitioner was authorized to exercise the right of eminent domain was a question to be determined by the court on the motion to dismiss.   (*Ward* v. *Minnesota and Northwestern Railroad Co.* 119 Ill. 287; *Chicago, Rock Island and Pacific Railway Co.* v. *City of Chicago,* 143 id. 641; *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 id. 511.)   That question was properly preserved by the course pursued by plaintiffs in error.

It is also contended that plaintiffs in error waived the error committed in the denial by the court of the motion to dismiss the petition, by filing cross-petitions in the matter of the assessment of damages, and by neglecting to make, before the statutory order upon the verdict was entered, a motion for a new trial or a motion in arrest of judgment.   Where a defendant in an action at law

interposes a demurrer to a declaration, which the court overrules, and the defendant then pleads over to the . declaration, the right to insist on the defect in the declaration may be regarded as waived. But the rule which governs a case of that character has no application here. This was not a demurrer to a declaration or other pleading. It was a motion to dismiss on the ground that the petitioner had no right to exercise the power of eminent domain. After the motion was overruled there was no pleading over by the plaintiffs in error, within the meaning of the law. The filing of cross-petitions had no relation to or connection with the motion to dismiss, and in our opinion plaintiffs in error had the right to be heard on the question of compensation and damages in the contest before the jury, without waiving any rights they had acquired by the motion to dismiss the petition.

In the petition to condemn it is alleged as follows: "Your petitioner, the Aurora and Geneva Railway Company, respectfully represents unto your honor that it is a corporation organized and existing under and by virtue of an act concerning corporations, approved April 18, 1872, in force July 1, 1872, of the general laws of the State of Illinois, and that said company was so incorporated for the purpose of constructing, maintaining and operating a horse and dummy railroad and tram-ways in the county of Kane, in the State of Illinois, and being so incorporated as aforesaid, and for the purposes aforesaid, your petitioner is subject to and has vested in it the provisions of an act of the General Assembly of the State of Illinois entitled 'An act in regard to horse and dummy railroads,' and of sections 1 and 2 thereof, by which said petitioner may enter upon and appropriate any property necessary for the construction, maintenance and operation of its road and all necessary sidings, side-tracks and appurtenances, and when it is necessary for the construction, maintenance and operation of the road of said petitioners and for the necessary sidings, side-tracks and appurte-

nances thereto to take private property, the same may be done by said petitioner, and said petitioner is entitled to have the compensation therefor ascertained and made in the manner now provided by law for the exercise of the right of eminent domain, under and by virtue of the provisions of an act of the General Assembly of the State of Illinois entitled 'An act to provide for the exercise of the right of eminent domain,' approved April 10, 1872, and in force July 1, 1872. Your petitioner further represents unto your honor that for the construction, maintenance and operation of its said road and all necessary sidings, side-tracks and appurtenances it is necessary for your petitioner to enter upon and appropriate the property hereinafter described, which said property is located along and on either side of a line now surveyed, located and staked out by your petitioner, which line is described as follows, to-wit:" (Then follows a description of the lands sought to be taken for railroad purposes.)

The appropriation of private property under the right of eminent domain is an exercise of sovereign power, and where reliance is placed upon statutes conferring the right, those statutes, being in derogation of common right, must be strictly construed, and the right cannot be exercised except in strict conformity to the power conferred. In *Chicago and Northwestern Railroad Co.* v. *Galt,* 133 Ill. 657, in the discussion of this question it is said (p. 667): "Lewis on Eminent Domain (sec. 600) says: 'The power to force a man to give up his property against his will, and for a consideration fixed by others, is one which is, in its nature, harsh, and against common right. According to all analogies of the law such a power, to be effectual in its exercise, must be strictly pursued. This has been repeatedly held with respect to the power of eminent domain.' To put the court in motion and give it jurisdiction in condemnation proceedings, a petition is, in general, necessary, and must be in conformity with the statute granting the right of condemnation. It should

set forth, by appropriate averments, all such facts as are necessary to authorize the tribunal to act. (*Smith* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 511; *Bailey* v. *McCain*, 92 id. 277.) It is thus stated by Mr. Lewis (sec. 53): 'The petition should show the use or purpose for which the property is desired, and that it was within the statutory powers conferred. It should show a clear right to condemn the property described. Accordingly it must not only show that the property is wanted for a public use, but also that it is for a use that is within the particular statute under which the proceedings are had.'" In a later case, (*Ligare* v. *City of Chicago*, 139 Ill. 46,) summing up this fundamental principle, it is said: "Statutes conferring power to exercise the right of eminent domain are to be construed strictly. Unless both the letter and spirit of the statute relied upon clearly confer the claimed power it cannot be exercised." The rule here indicated has been sanctioned and adopted in other States. *Pittsburg Construction Co.'s Appeal*, 122 Pa. St. 531; *Currier* v. *Marietta and Cincinnati Railroad Co.* 11 Ohio St. 231.

It will be observed that the petitioner, the Aurora and Geneva Railway Company, was organized under the general Incorporation act of the State. (Rev. Stat. chap. 32.) Section 1 of that act provides: "Corporations may be formed, in the manner provided by this act, for any lawful purpose, except banking, insurance, real estate brokerage, the operation of railroads and the business of loaning money: *Provided*, that horse and dummy railroads may be organized and conducted under the provisions of this act." At the same session of the legislature a general law was passed for the organization of railroad companies. (Rev. Stat. chap. 114.) A railroad company organized under this latter act was authorized to select the most advantageous route for the location of its road; to purchase, hold and use such real estate as might be necessary for the construction and use of its railway; to lay out its road, and construct the same, one hundred

feet in width; to purchase or condemn private property
for right of way, or other lawful purpose connected with
the building, operating or running of the road.    But no
such power was conferred on horse and dummy railroads
organized under the general Incorporation act.    No right
was conferred upon such organizations to acquire private
property, by condemnation or otherwise, and it is not
claimed in the argument that under the general Incorpo-
ration act, under which defendant in error was organized,
it was clothed with any power to take or condemn pri-
vate property for right of way or other purpose.    But in
1874,—two years after the enactment of the general In-
corporation act and the Railroad act,—the legislature
passed an act in regard to horse and dummy railroads,
(Rev. Stat. p. 571,) and under this act petitioner claims
it is authorized to condemn private property for its line
of road.    That act, so far as it pertains to the question
involved, is as follows:

"Section 1. *Be it enacted by the People of the State of Illi-
nois, represented in the General Assembly,* That any company
which has been or shall be incorporated under the gen-
eral laws of this State for the purpose of constructing,
maintaining or operating any horse or dummy railroad
or tram-way, may enter upon and appropriate any prop-
erty necessary for the construction, maintenance and op-
eration of its road, and all necessary sidings, side-tracks
and appurtenances, and may, subject to the provisions
contained in this act, locate and construct its road upon
or over any street, alley, road or highway, or across or
over any waters in this State, in such manner as not
to unnecessarily obstruct the public use of such street,
alley, road or highway or interrupt the navigation of
such waters.

"Sec. 2. When it is necessary for the construction,
maintenance or operation of such road, or the necessary
sidings, side-tracks or appurtenances, to take or damage
private property, the same may be done, and the com-

pensation therefor may be ascertained and made in the manner which may be then provided by law for the exercise of the right of eminent domain.

"Sec. 3. No such company shall have the right to locate or construct its road upon or along any street or alley or over any public ground in any incorporated city, town or village without the consent of the corporate authorities of such city, town or village, nor upon or along any road or highway or upon any public ground without any incorporated city, town or village, except upon the consent of the county board."

There is a wide and well understood difference between a railroad organized for general traffic, and a street, horse or dummy railroad, and in placing a construction on the act in question, in order to arrive at the intent of the legislature, the functions, duties and purposes of street or horse and dummy railroads must be kept in mind. A street railroad, as is well understood, is a road constructed on a street or highway for the purpose of conveying passengers living upon or having business on such street or highway, its main object being to accommodate street travel. For this purpose the cars make frequent stops to take on and discharge passengers along the street or highway. Constructed, as it is, upon a public street or highway, it has no use for private property, unless it might need a small tract for a side-track, turn-out or station, as an incident to its main line. In *In re South Beach Railroad Co.* 119 N. Y. 141, the court of appeals of New York, in the discussion of a question similar to the one involved here, said: "The chief element of a street railway is, that it is built upon and passes along streets and avenues for the convenience of those living or moving thereon. Its fundamental purpose is to accommodate the street travel, and its motive power is dictated and regulated to that end, and while, consistently with its general object, it may need for switches or storage, or stables or stations, the land of private own-

ers, yet the necessity is only incidental to the main pur-
pose of a line along the street accommodating the street
travel." The Supreme Court of Pennsylvania, in *Rahn
Township* v. *Street Railway Co.* 167 Pa. St. 90, says: "Street
railways are railways on or along the streets of a city
or town. They must conform to the grade of the streets
they occupy. They may diverge for a short distance,
where the conformation of surface or the position of
streams makes it necessary, in order to avoid discomfort
or danger to the traveling public; but that a street rail-
way may, like a steam railway, locate its route, not for
the accommodation of local travel along the highways,
but to reduce time and distance for passengers traveling
from city to city or town to town across the country, is
a proposition not to be entertained, and involves a per-
version of the character and object of street railways."

It is clear that section 2 of the act of 1874 confers
power upon a street or horse and dummy railroad com-
pany to take private property, but the power is a limited
one, as is apparent from the language of the section. It
declares: "When it is necessary for the construction,
maintenance or operation of such road, or the necessary
sidings, side-tracks or appurtenances, to take or damage
private property, the same may be done." Giving this
language a strict construction, which, under the uniform
decisions of this court, must be done, can it be said that
defendant in error was at liberty, in the construction of
its road, whenever it saw proper, to leave the highway
upon which it was authorized by the board of supervisors
of Kane county to construct its road, and take private
property against the will of the owner? We think not.
If, in the construction of the road in the highway, diffi-
culties or obstructions were encountered which rendered
it impracticable to construct the road in the highway,
a necessity might arise, within the meaning of the law,
which would authorize the company to leave the highway
and go upon private property until the difficulty encoun-

tered was overcome, when a return could be made to the highway; or if sufficient land could not be had in the street for side-tracks, turn-outs or stations, and the same were necessary for a successful operation of the road, under the statute the company would have the right to resort to private property. The power conferred by section 2 of the act is not general. It is limited to a case where it becomes necessary to resort to private property, and that necessity must be shown in the petition to condemn. What is said in 119 N. Y. *supra*, applies here: "Section 13 of the act of 1850 allows any corporation organized thereunder to obtain by condemnation such land as is 'required for the purposes of its incorporation.' The power is not general or unlimited. The company cannot condemn what it pleases, but only such and so much land as the proper execution of its corporate purposes shall require and render necessary." Here no reason whatever was shown by the petitioner for leaving the highway, nor was any evidence introduced on the hearing of the motion to dismiss, showing a necessity for leaving the highway and resorting to private property. On the other hand, the plaintiffs in error showed by affidavits that there was no substantial difficulty in constructing and operating the railroad in the highway, where the defendant in error was authorized to construct it by the county authorities.

It thus appears that the managers of the street railroad company abandoned the highway and undertook to construct their line of road over private property when it was not necessary to do so in the construction, maintenance or operation of the road. This they had no right to do. In the construction of the road, if a necessity existed for making a deflection from the highway in order to avoid a heavy grade which would prevent a successful operation of the road, defendant in error would no doubt have the right to take and condemn private property to obviate the difficulty. But this record does not present a case of that character. Here the construction of the

road in the highway was abandoned and a new route selected running over private property for more than a mile, no necessity whatever appearing for making the change. This was without authority of law, and the court, on the motion, should have dismissed the petition.

For the error indicated the judgment will be reversed and the cause will be remanded.

*Reversed and remanded.*

Mr. JUSTICE PHILLIPS: I am of opinion that under the Horse and Dummy act the right to condemn right of way is given, hence I dissent.