ALFRED I. HARTSHORN *et al.*

*v.*

THE ILLINOIS VALLEY TRACTION COMPANY.

*Opinion filed June 23, 1904.*

1. STREET RAILWAYS—*limits of power of street railway to condemn private property.* The Street Railroad act, as amended in 1897, (Laws of 1897, p. 282,) which authorizes street railroads to appropriate any property necessary for the construction of its road, does not authorize condemnation of private property for right of way except in case of necessary deflections from the highway.

2. SAME—*street railroad cannot abandon highway between towns and condemn right of way.* To authorize condemnation of private property for a street railroad right of way between two towns upon the theory of a necessary deflection from the highway, it must appear that there is an honest effort to follow the highway, and not an abandonment, for the entire distance, of the highway the company is legally authorized to use.

APPEAL from the County Court of LaSalle county; the Hon. W. H. HINEBAUGH, Judge, presiding.

Appellee is a corporation organized under the general law of 1872 as a street and interurban railroad company, for the purpose of constructing electric street railways in a number of towns, beginning with Princeton, in Bureau county, going thence to Ladd, thence to Spring Valley, thence to LaSalle, Utica, Ottawa and Marseilles, in LaSalle county. The proceeding is condemnation, under the Eminent Domain act, for the right of way for part of the distance between LaSalle and Utica, in LaSalle county. At the time of bringing the action appellee had its system constructed in Ladd, Spring Valley and La-Salle and these points connected with each other, and was endeavoring to proceed eastward from LaSalle to Utica. The power house is located on section 15 in LaSalle township, and Utica is located on the eastern boundaries of sections 8 and 17 in Utica township, there being practically four sections of land between the cities of LaSalle and Utica. For a better understanding of

the location of the lands and the questions arising in this case the following plat will be of service:

At the south-eastern boundary of LaSalle, and leading thence north-easterly through Utica, is the Illinois and

Michigan canal, and paralleling this canal, and on the
northerly side of the same, is the Chicago, Rock Island
and Pacific railroad, which enters both LaSalle and
Utica.   South of both Utica and LaSalle, and south of
the canal and railroad, is the Illinois river and its bot-
tom lands, the canal and the Chicago and Rock Island
railroad skirting the foot hills or bluffs lying to the north
of the Illinois river.   Leading from LaSalle to Utica are
two highways or wagon roads.   One is designated as the
"bottom road," which leaves LaSalle at the southern
boundary of that city and runs in an easterly course
through the bottom near the Illinois river until within
a mile of Utica, when it bears off north-easterly to that
town.   The other road is called the "upper road," and
at the city of LaSalle, starting in the direction of Utica
and both leading to this upper road, are two roads or
streets, one termed the "Fifth street road," and lying
about the middle of the east line of the city of LaSalle,
and the other the "Bluff street road," which departs from
LaSalle at or near the south-east corner of the city and
near to the Rock Island railroad tracks and the canal.
These two roads thus lie about a quarter of a mile apart
and both go in an easterly direction until section 14, the
section lying immediately east of LaSalle, is crossed.
On the line between sections 13, 14, 11 and 12 in LaSalle
township is a road running north, which is termed the
"upper road," and leads to the north-west corner of sec-
tion 12 in that township, leading thence east on the north
boundary of section 12 in LaSalle township and section 7
in Utica township to the north-east corner of said sec-
tion 7, thence south one-half mile on the west boundary
of section 7, and thence east, nearly across section 8 in
Utica township, to the town of Utica.   Appellee peti-
tioned the county board of LaSalle county to grant it
permission to construct its line of railroad along this up-
per road, leaving the city of LaSalle by the Fifth street
road, and that petition was granted.   That application

was not general, but specific, and was for a certain line of road. No other petition appears to have been presented to the county board or the order made upon the original petition in any way modified by it. The bottom road, lying along the Illinois river, is subject to inundation during a large portion of each year, the waters at times becoming so high that it would be impracticable and unsafe to operate a street railroad along it.

Because of alleged difficulties in the nature of excessive grades, additional distances and increased cost, appellee determined to entirely disregard the grant of right of way over the roads from the county board and to construct its road almost entirely over private lands from LaSalle to Utica. By the plans adopted by appellee, its road leaves LaSalle at the south-east corner of the city, starting out over the Bluff street road, about one-third of a mile south of the Fifth street road, and following the Bluff street road until the Little Vermilion river, which lies close to the eastern boundary of LaSalle, is crossed, then leading south of the Bluff street road, through the little mining village of Rockwell, to the center of section 14 and paralleling the Rock Island railroad and the canal, taking a north-easterly course, until near the north and south center line of section 13 is reached, where it is proposed to cross the railroad and the canal, to the south, by a bridge, and thence follow the southerly boundary of the canal to the town of Utica.

Appellee claims to have acquired, by private grant, the right of way through sections 8, 7 and 18 in Utica township and that part of section 13 south of the railroad and canal, and the lands sought to be condemned by this proceeding are in the north-west quarter of section 13 in LaSalle township. Through that quarter section, and coming from the north-west, is what is called "Swanson's ravine." Appellant Hartshorn was originally the owner of the north-west quarter, and sold to the Garden City Sand Company sixty and one-half acres lying north of

the railroad right of way and east of Swanson's ravine, and Hartshorn owns the portion sought to be condemned lying west of the ravine, and is part of the tract which leads from the ravine to the proposed bridge across the railroad and canal.   The length of the strip across the land of the sand company is 1229 feet and across the land of Hartshorn is 1878 feet, making a total length of 3107 feet, with a width of 50 feet.

The Garden City Sand Company purchased the sixty and one-half acres of land in said quarter section for $12,-100.   It is organized to manufacture and sell brick, lime, cement, plastering and building materials, and claims that the bluffs contain extensive deposits of clay and shale of great value in the manufacture of building brick, paving brick, sewer-pipe and fire brick, and also contain a valuable deposit of sandstone of such quality that it is of great value and for which there is an active demand in foundries, the same being suitable for foundry work; that the same deposits are in the Hartshorn land adjoining the sand company's land on the east; that the sand company was about to construct a large plant for the purpose of manufacturing brick and tile, and that the bluffs are so near to the Rock Island railroad that if appellee continues the right of way that it seeks, said sand company will not have sufficient ground at the foot of the bluffs upon which to build its plant, and that both Hartshorn and the sand company will be cut off from access to the Rock Island railroad, over which they purpose to ship the product of the manufactories from their land; that both appellants had applied to the Rock Island company for a switch prior to the proceeding for condemnation or before they had any knowledge of the intention of appellee to adopt said route; that said Rock Island railroad passes through a tunnel at or near the point called "Split Rock," the same being the place where appellee proposes to build its bridge over said track, and that said railroad company, because of said tunnel,

requires appellants to put in and maintain a long and expensive switch; that there is already a switch track along said route leading to another manufacturing company farther east toward the town of Utica, which said traction company crosses and which is to be used for switching and handling of cars of freight, and appellants claim that the damages allowed them are wholly inadequate in view of the character of the lands, the uses for which they are suitable and the conditions relative to construction of the plant and access to the railroad.

There is little or no controversy upon the proposition that the bottom road is unsuited to railroad purposes. Appellee, in its petition, states that it is subject to overflow and inundation, and the appellants seem to concede that such is the case. As to the upper road, appellee in its petition says: "The upper road, * * * on leaving North Utica for LaSalle, on said road very steep grades are met with, and there is no way to construct a railway, either on said upper road or in any other direction in which said road lies, so as to avoid said grade, and the said grade is so steep and continues to so great a length that it is impossible and impracticable to construct a street railway system so that the same might be successfully operated upon said upper road or upon any land adjacent thereto; that any attempt to use said upper road for the construction and creation of said railway would require a crossing at a grade with the many railway tracks of the Chicago, Rock Island and Pacific Railway Company in and near the village of North Utica; that over said tracks both passenger and freight trains are passing many times a day; that the said village is a small community, at which the limited and through passenger trains and freight trains of said company do not stop but through which they are run at very high and dangerous rates of speed, and that to attempt to construct and to operate a street railway system at a grade across said tracks would be productive of great and seri-

ous danger to the property of your petitioner's proposed road; that following said upper road as it leads north and west from said village, and about a mile and a half distant therefrom, another deep gully or ravine is crossed, the grades leading to and from which being so precipitous as to make the operation of your petitioner's road on the highway at said point impracticable and from a railroad point of view impossible."

When the petition was filed appellants moved to dismiss the same upon the ground that the appellee company, organized under the Horse and Dummy Railroad act, had no authority to construct a railroad, in the manner this road is proposed to be constructed, over private lands almost the entire distance from LaSalle to Utica, but that it should follow the highways, and that the land proposed to be condemned was not for the purpose of enabling it to follow highways, but for the sole purpose of enabling appellee to abandon and disregard the highways.

In support of and against the motion to dismiss a large number of affidavits were filed, those in behalf of appellants tending to show that the upper road was a practicable route for appellee's road, and that the difficulties complained of by appellee could be overcome without excessive cost, and without a violation of the spirit of the law, as appellants interpret it, requiring a reasonable adherence to the highways. Counter-affidavits were filed by appellee. The motion to dismiss was overruled. Appellants then filed cross-petitions alleging injury to lands not taken. Appellee further amended its petition by particularly describing the lands sought to be taken, and appellants again renewed their motion to dismiss the petition upon the same grounds that the first motion was made, and it was agreed that the affidavits before taken upon the question should be applicable to the renewed motion, and additional affidavits were also presented, and the court, upon consideration, again denied the motion to dismiss.

On the day the cause was set for hearing as to the amount of damages, the appellee again moved the court for leave to further amend its petition, and leave being granted, over the objection of appellants, appellee further amended its petition by stating that it proposed to leave the city of LaSalle by the Bluff street road and to diverge from said road shortly before arriving at the eastern terminus thereof, said terminus being the point where said road intersects the north and south road between sections 13 and 14 in LaSalle township, and said latter road being mistermed the "upper road." Appellee further states that it is impossible to follow said highway north because there is a grade of eight per cent for 200 feet of said road after turning north from Bluff street, and that between sections 11 and 12, for a mile, there is a continuously sustained grade of three per cent, and that it is entirely impracticable to construct said railroad on said highway. Appellants, after said amendment, renewed their motion to dismiss the petition and asked for further time to file additional evidence, which the court denied and overruled their motion to dismiss. A jury was empaneled and the evidence heard as to damages, and the damages were fixed at $200 per acre for the lands taken and no damages were allowed for lands not taken. Appellants prosecute this appeal, and urge that the court should have dismissed the petition upon the ground that appellee has no authority of law to exercise the right of eminent domain under the circumstances shown in this case, that it was error for the court to permit appellee to amend its petition, and for other grounds.

FULLERTON & ELDREDGE, and EDWIN C. CRAWFORD, for appellants:

General benefits, and such as arise by making a better market or by affording conveniences for travel, can not be set off against damages to contiguous property not taken. *Railway Co.* v. *Aldrich*, 134 Ill. 9; *Railway Co.* v. *Stickney*, 150 id. 362.

A street railway company organized under the general Corporation act has not *ipso jure* authority to exercise the right of eminent domain. *Harvey* v. *Railway Co.* 174 Ill. 295; *Railway Co.* v. *Harvey,* 178 id. 477; *Harvey* v. *Railway Co.* 186 id. 283; *Dewey* v. *Railway Co.* 184 id. 426; *Railway Co.* v. *VanHoorebeke,* 191 id. 633.

The petition must show petitioner is authorized by law to exercise the right of eminent domain, and must by reference set out the particular statute by virtue of which it is authorized to exercise such right. *Railway Co.* v. *Galt,* 133 Ill. 657; *Harvey* v. *Railway Co.* 174 id. 295; *Smith* v. *Scales Mound,* 195 id. 353; *Railway Co.* v. *Railway Co.* 149 id. 285; *O'Hare* v. *Railway Co.* 139 id. 151; *Smith* v. *Railroad Co.* 105 id. 511; Lewis on Eminent Domain, sec. 240.

Both the letter and the spirit of the law must be followed. *Ligare* v. *Chicago,* 139 Ill. 64; *Goddard* v. *Railway Co.* 202 id. 368.

Where condemnation is for both a public and a private use, and they are inseparable, the power cannot be exercised. *Railway Co.* v. *Galt,* 133 Ill. 657.

When a jurisdictional fact is traversed it must be proven. *O'Hare* v. *Railway Co.* 139 Ill. 151; *Railway Co.* v. *Chicago,* 132 id. 376; *Reed* v. *Railway Co.* 126 id. 52; Cooley on Const. Lim. 528.

It is error to refuse to exhibit plans of the proposed construction on the lands taken. *Railway Co.* v. *Railroad Co.* 112 Ill. 602; *Tedens* v. *Sanitary District,* 149 id. 89.

An attorney is not authorized to stipulate as to the manner of the proposed construction. *Rubel* v. *Trust Co.* 199 Ill. 115; *DuPont* v. *Sanitary District,* 203 id. 177; *Railway Co.* v. *Haws,* 194 id. 94.

DUNCAN, DOYLE & O'CONOR, for appellee:

A street railway company organized under general Incorporation act "may enter upon and appropriate any property necessary for the construction, maintenance and operation of its road." Rev. Stat. chap. 131*a*, sec. 1.

In the construction of statutes relating to the taking of private property, the word "necessary" should be construed to mean "expedient," "reasonably convenient," or "useful to the public," and cannot be limited to an absolute physical necessity. *Railway Co.* v. *Harvey,* 178 Ill. 477.

Even where there is no direct testimony as to the truth of the allegation that the petitioner was unable to agree with respondents as to compensation and damages, yet the fact that there is a vigorous contest between the petitioner and the respondents, both on the original and cross-petitions, is evidence of an inability to agree. *Ward* v. *Railway Co.* 119 Ill. 287; *Railway Co.* v. *Railroad Co.* 149 id. 272; *Lieberman* v. *Railroad Co.* 141 id. 140; *Schuster* v. *Sanitary District,* 177 id. 626.

Where the respondents make no objection to the jurisdictional allegations of the petition they are properly treated as admitted as in case of default, and the court may ascertain the compensation without proof of the truth of such allegations. *O'Hare* v. *Railway Co.* 139 Ill. 151.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

The appellee, by its affidavits, designates four points where it is claimed the physical difficulties in the proposed upper road route exist. It is first said, that after leaving the Bluff street road and turning north on the road between sections 13 and 14, a grade as high as eight per cent, near one place, is encountered. The distance that this grade must be maintained is not stated by appellee, but appellants say that such grade only exists for a short space, not exceeding 100 feet, and that the same can be overcome by proper cuts and fills, so that an average grade of three per cent or less can be established between the Bluff street road and the point where it turns east, at the north-east corner of section 12. Appellee also says that along the north line of section 12, for a mile, there is a sustained grade of three per cent.

This statement is not supported, but is contradicted by all the profiles, cuts and surveys made of that route. It would require a fall of 158 feet to the mile to produce such a grade, and no such elevation is shown by any plat in evidence. In fact, practically 100 feet is the greatest elevation or the greatest distance between the lowest and highest point between any of the routes.

On the north line of section 7 in Utica township, and near the center of that line, is Crozier creek, which is designated as being about 80 feet deep and from bluff to bluff about 600 feet across. It is simply one of those depressions that is found in hilly countries, with a waterway cut through the center. Some of affiants for the appellee state that upon each side of this creek is a grade 1000 feet in length, each declining toward the ravine,—that upon the west side five per cent and that on the east side eight per cent,—while the actual surveys and the testimony of those who made actual surveys show that the slope on the west side is 300 feet long, with an average grade of 3.8 per cent, and on the east side of the ravine is 600 feet, with an average grade of five per cent. The bluffs along the line of the highway have been cut down considerably in making the highway, and between the bluffs a grade, said to be about 30 feet high and about 20 to 25 feet wide at the top, has been made for the use of the highway, and appellee says that if its road is constructed along this line the embankment for the highway, being so narrow, will not accommodate the general travel and appellee's railroad, and that it will be necessary to build a trestle along the side of this embankment 600 feet in length, and, as the affiants for appellee say, 80 feet high. This latter statement, of course, must not be taken literally, but means from the creek to the level of what would be the road might be 80 feet, but no one would believe that there is such space of 600 feet with a depression across it that is 80 feet in depth, and the survey shows otherwise.

The next point, proceeding east, of which complaint
is made, is Utica hill, which is located in section 8 and
near the town of Utica. It is said of this hill that for
1800 feet there is an average grade of five per cent, and
at places it is as much as ten per cent. This statement
is absolutely denied by the affiants on behalf of appel-
lants, who state that a road can well be constructed so
that the grade will not exceed 5.8 per cent, following the
highway, and that by deviating from the highway at a
point 200 feet west of the center of section 8, running in
a south-easterly course, it is entirely practicable to have
a road with an average grade of 3.4 per cent; that to do
this will necessitate procuring right of way over private
property for 2900 feet; and appellee says that this would
be practically as much private ground to be condemned
as is sought to be condemned by this proceeding. Fol-
lowing the highway from the point of suggested devia-
tion to the town of Utica the distance is 3133 feet, and by
the deviation it would only be 2900 feet, thus avoiding
the objectionable grade, and, what is said or claimed to
be still more objectionable, short turns along and near
the foot of this grade and near the town of Utica.

One other objection is urged by appellee, namely, the
grade crossing with the Chicago and Rock Island rail-
road in the town of Utica. It is said that through this
town some eighteen or twenty trains pass a day, not
more than eight of which stop at the town, and that
those that do not stop go through at a high rate of speed,
and that the railroad approaches the town on curves
from both sides, so that at the street crossings an ap-
proaching train cannot be seen. Appellants reply to
this, that other street railroads do cross the same or
similar railroad crossings, and that this particular road
crosses similar crossings at other points and in other
towns, and that while there is danger attendant upon it,
it is not such a difficulty as prevents the construction
of roads such as appellee's at such crossings; and fur-

ther, that as appellee proposes to cross both the railroad and canal on the route selected by it at a point where rock must be blasted and a high bridge maintained, it had as well adopt the line that deviates at section 8 and continue its road by an overhead bridge across the railroad. A great number of plats have been introduced, and the affidavits of a number of persons on each side, in support of the respective contentions. Appellee offered the affidavits of a number of expert engineers who did not survey the road, and who spoke from information as to elevations that seems to be erroneous. Those testifying on its behalf say that they do not wish to be understood as saying that it is impossible to operate an electric railroad over the upper road, but in view of the hills and grades that are met with and the additional cost of construction and operation, and the damages that result from those conditions in the operation of the road, they do not regard it as practicable, but, on the contrary, altogether impracticable; while those who made the surveys for appellants, and a number of experts who did not make surveys, testify that it is practicable to follow the upper road the entire distance and to construct and operate an electrical road such as appellee proposes. The experts who made affidavits for appellants, who traversed the ground and examined the surveys made, agree that the grade at Utica hill is objectionable from an engineering point of view, because of the steep grade and short radius curve at the foot thereof, but say that if a deviation can be made, as they are informed it can, near Utica hill, and a descent into the town on a grade of three per cent be obtained, it is entirely practicable to construct the road between the two towns over the upper road route.

As we read these affidavits of the various persons in behalf of appellee, we are impressed with the view that the most objectionable feature to this route, to appellee, is the distance, which is conceded to be 2.45 miles greater

than the route it proposes to take. In the minds of those conducting its affairs two ideas seem to be of prime importance: speed and distance. Affiants on the part of appellee say that, ordinarily, it is estimated that the construction of such a road can be made at an average cost of $20,000 a mile, and that to construct this road along the line of the upper road would add to the cost $73,500. This additional cost is very largely made up by the extra distance, on the basis of $20,000 a mile. Of the cost $49,000 would be for the difference in distance, but in this particular matter appellee's engineer placed the cost at $30,000 a mile, including the necessary trestles and bridges.

It does not appear to us a substantial reason for entirely abandoning the highway that the traveled way, or portion of the way, is by an embankment that is not wide enough to accommodate the general travel and appellee's road. There has at no time been any question of the right of appellee, or roads similarly organized, to acquire, by condemnation or otherwise, the necessary land for such deviation from the highway as the physical conditions require, and if it be that at any point the road should be too narrow or the turns too abrupt, we are entirely clear that appellee would have the right to acquire the additional width or to acquire the necessary land for proper turns. Nor are we impressed with the contention that the grades here complained of are insurmountable objects in the minds of appellee's managers. The undisputed fact appears in this record that at Spring Valley this same company is operating a line from its power house in LaSalle, distant three or four times the distance from LaSalle to Utica, where a sustained grade of three to six per cent exists for 2000 feet, and the contention that it will require a heavier wire to operate its lines where the grades are distant from the power house must apply with greater force at Spring Valley than at any point between LaSalle and Utica. It is also appar-

ent that the route selected is not free from grades and from objectionable features in the construction of such railroads. At the eastern portion of said road, coming out of the town of Utica, there is a rapid decline showing practically 20 feet in 400 feet, and thence on toward LaSalle, for about half the distance, the ground is uneven and broken and requires a considerable embankment to be maintained and numerous cuts to be made, while the western half, lying next to the city of LaSalle, is quite broken, requires extensive cuts and fills, the blasting of rock, and contains grades ranging from three to eight per cent, besides requiring the construction of an extensive bridge across the railroad and canal.

While this statute (chap. 131$a$, sec. 1,) provides that a company such as appellee may appropriate any property necessary for the construction of its road, we must not lose sight of the character of such road in determining what is necessary for its construction. In *Harvey* v. *Aurora and Geneva Railway Co.* 174 Ill. 295, we said (p. 307): "A street railroad, as is well understood, is a road constructed on a street or highway for the purpose of conveying passengers living upon or having business on such street or highway, its main object being to accommodate street travel. For this purpose the cars make frequent stops to take on and discharge passengers along the street or highway. Constructed, as it is, upon a public street or highway, it has no use for private property, unless it might need a small tract for a side-track, turnout or station, as an incident to its main line." We further said (p. 308): "They may diverge for a short distance, where the conformation of surface or the position of streams makes it necessary, in order to avoid discomfort or danger to the traveling public; but that a street railway may, like a steam railway, locate its route, not for the accommodation of local travel along the highways, but to reduce time and distance for passengers traveling from city to city or town to town across the

country, is a proposition not to be entertained, and involves a perversion of the character and object of street railways." Such railways may deflect from the highway where necessary, but they must make an honest effort to follow the highway, and until it appears that they are following the highway there is no basis or excuse for deflection and no right to condemn private property upon the theory that they are deflecting or diverging from the highway. Abandonment of the highway is not deflection from it, within the law regulating such companies. Appellee, at no place between the corporate limits of the town of Utica and the city of LaSalle, is upon, or purposes to construct its road along, a single foot of the highway that it is legally authorized to use. It claims to follow the Bluff street road part of the distance from the city of LaSalle toward the town of Rockwell, a little mining town near to the eastern boundary of section 14; but if it does, it is without authority, as the county board gave it no such right, and the right could only be granted by the county board. (Hurd's Stat. 1899, chap. 131a, sec. 3.) Then, so far as basing its right to take the land in question upon the theory that it is deflecting or diverging or digressing from the highway, or that the taking of such land is incident to the exercise of such right or becomes necessary because of the inability of appellee to follow the highway at some particular point, is concerned, it may be said there is no foundation for such theory. The evidence shows that appellee made a preliminary survey and knew the condition of the upper road at the time it made its application to the county board for leave to follow such road, and the engineer who made that survey deposes, on behalf of appellants, that such route was entirely feasible and practicable. By following the upper road route appellee now claims that only thirty families, or about one hundred and thirty people, will be accommodated. By going the Bluff street route it goes through the village of Rockwell, and also,

in its progress east, but across the canal and Rock Island railroad from it, is another manufacturing plant, called the Utica Hydraulic Cement Company, where there is a little settlement, and appellee claims that there is a foot bridge across the canal and railroad, by which it can have the patronage of this latter plant.

To an uninterested and unbiased mind it would appear that the main object of appellee is to parallel the railroad and to get the benefit of the traffic between the towns lying along it, and that it is not keeping an eye solely to the interest of the rural inhabitants along the public roads; nor can it be solely for the interest of the people living along these little settlements which it proposes to touch, as each and all of them are located both upon the Rock Island railroad and along the Illinois and Michigan canal, having already provided for them two methods of transportation. In considering the rights of these companies we are not to look alone to that which will best promote their financial gain. They are asking for the power of the State to take private property, and it is only upon the theory of a public use that such right can be granted to them, and appellee, in its effort to save distance, and thereby save expense of construction, and in its desire to establish and maintain rapidity of transportation, is, as we think, taking the character of such roads into consideration, departing from the intention of the law-making branch of the government, by which such organizations were authorized. So far as they are authorized to travel through the country districts, it is upon the theory that they will be of benefit to the rural inhabitants, and not that only those living in towns, where regular stations shall be maintained, shall be the beneficiaries. As was said in the *Harvey case, supra,* they are presumed to follow the highways, making all the stops necessary for the accommodation of the people living along the highways. The fact that they have adopted electricity as their power

210—40

instead of the horse or the dummy cannot enlarge their powers or lessen or change their duties. If the country districts are so sparsely settled that the traffic along them will not support such roads following them, then their construction is not a public necessity, and the power of eminent domain, upon the theory that they are to exercise a public function, cannot be called into action in their behalf. If they seek to travel across the country as do steam railroads, disregarding highways and disregarding the interests and conveniences of the country people, let them organize under the law regulating steam railroads, and be subject to the regulations of the statute and the burdens cast upon such railroads. On the other hand, if they wish to avoid these burdens and to avail themselves of the greater freedom and the right to burden the highways, then they must be willing to observe and perform the duties that they owe to the public as such.

The case of *Aurora and Geneva Railway Co.* v. *Harvey*, 178 Ill. 477, does not go to the extent here contended for. It is true that in that case it was said, in construing the word "necessary," in connection with the right to condemn, that it meant "expedient," "reasonably convenient" and "useful to the public;" but in that case there was not a total departure from the route authorized, and appellee, as it seems to us, disregards that portion of the definition there given which required that it should be "useful to the public," but seems only to consult its own interest and welfare. If it means that it is impracticable to build this railroad through the country districts because there is not enough patronage to pay it to do so, then there is no public necessity for it, and it cannot be said to be useful to the public as a street railroad.

We think the motion to dismiss the petition should have been allowed. The judgment of the county court of LaSalle county is reversed.     *Judgment reversed.*