Merrimack, ⎱
June 5, 1917. ⎰

## ALBERT THOMPSON & a. v. MANCHESTER TRACTION, LIGHT & POWER COMPANY.

A petition for the determination of damages caused by the flowing of land by a
   public utility may be maintained under the provisions of the flowage act
   (P. S., c. 142), which are not superseded by the statute of public utilities.
   (Laws 1911, c. 164, s. 13).

PETITION, under chapter 142 of the Public Statutes to assess the
damages caused to the plaintiffs by the defendants' flowing their
land.   The petition coming on for hearing, the defendants repre-
sented that they had filed a petition with the public service commis-
sion under chapter 164 of the Laws of 1911 and amendments thereto,
to acquire as against the plaintiffs, certain rights of flowage or ease-
ments necessary to the maintenance of certain flash boards to be
used on their dam, and for a necessary extension of their plant and
works.   The defendants filed a plea and motion, claiming that the
proceedings before the public service commission, under chapter
164 of the Laws of 1911, and the amendments thereto, supersede the
proceedings begun by the plaintiffs under the flowage act, and re-
quested the court so to rule, and to continue the petition under the
flowage act until the final determination of the petition of the de-
fendants before the public service commission.   The case was
transferred without ruling, upon the agreement that, if the provi-
sions of chapter 164 of the Laws of 1911 supersede chapter 142 of
the Public Statutes (and the amendments thereto) and apply to the
determination of the value of the rights and easements in this case,
the defendants' motion shall be granted; if not, then this case shall
stand for trial in its order.   Transferred without a ruling from the
October term, 1916, of the superior court by *Sawyer*, J.

*Robert W. Upton*, for the plaintiffs.

*Streeter, Demond, Woodworth & Sulloway*, and *Jones, Warren,
Wilson & Manning*, for the defendants.

PLUMMER, J.   The defendants contend that they are entitled to
acquire flowage rights under section 13 (d) of chapter 164 of the
Laws of 1911, and that the flowage act (P. S., c. 142) respecting

public utilities is thereby superseded. This section, which was not changed by amendments made in 1913, provides that "Whenever it is necessary, in order to meet the reasonable requirements of service to the public, that any railroad corporation or public utility subject to supervision under this act should construct a line, branch line, extension or a pipe-line, conduit, line of poles, towers or wires across the land of any other person or corporation, or should acquire land for necessary extension of any plant or works operated by such railroad corporation or public utility, and such railroad corporation or public utility cannot agree with the owner or owners of such land as to the necessity or the price to be paid therefor, such railroad corporation or public utility may petition the commission for such rights and easements or for permission to take such lands as may be needed for said purposes." The rights and easements that public utilities are empowered to take by eminent domain under this act, are to construct a line, branch line, extension, or a pipe-line, conduit, line of poles, towers or wires across the land of any other person or corporation. And the land that this law enables them to acquire, is land for necessary physical extension of any of their plants or works; that is, the land upon which they desire to construct buildings or other works. The defendants contend that the use of the words "rights and easements" and "land" in the statute makes it broad enough to include flowage rights. Undoubtedly these terms are sufficient to describe such rights. But these words do not refer to flowage rights. They have reference to certain definite purposes enumerated in the statute, as above pointed out. The act does not give public utilities the power to secure flowage rights by eminent domain. Its language does not indicate that such was the intention of the legislature. The rights that they can obtain by eminent domain are specifically stated, and flowage rights are not included.

This statute, which gives to public utilities the special and extraordinary right to condemn private property for their uses, being an exercise of sovereign power, and in derogation of common right, must be strictly construed, and should not be extended beyond its plain and unmistakable provisions. *Claremont Co.* v. *Putney*, 73 N. H. 431; *Mitchell* v. *Electric Co.*, 70 N. H. 569; Cooley Con. Lim. (7th ed.) 762; *Harvey* v. *Aurora & Geneva Ry. Co.*, 174 Ill. 295, 304; *United States* v. *Rauers*, 70 Fed. Rep. 748; *Moorhead* v. *Railroad*, 17 Ohio 340, 351; *Lance's Appeal*, 55 Pa. St. 16, 26. "In the construction of powers given to a corporation to take land by emi-

nent domain, every reasonable doubt is to be resolved adversely. The affirmative must be shown and silence is negation." 15 Cyc. 567, *note* 60; *Providence &c R. R. Co., Petitioner,* 17 R. I. 324, 343. In *Claremont Co.* v. *Putney, supra,* the plaintiffs claimed that they were authorized to take water rights by eminent domain because their charter gave them the power to "lease, purchase, hold, and acquire such real and personal estate as may be necessary or convenient in carrying out the purposes for which said corporation is organized." Laws 1901, *c.* 276. The court in answer to this claim said: "The first contention of the plaintiffs is, that it is to be implied from the use of the word 'acquire' in their charter that the legislature intended to confer upon them the power to take by eminent domain such property, real and personal, as might be necessary to the prosecution of their business. But the answer to this is, that as the exercise of this power is against common right, and the plaintiffs' charter does not expressly confer the power, or point out the steps to be pursued in its exercise, or make provision for compensation, the presumption is that the legislature did not intend to confer it. Private property cannot be invaded by this power without statutory authority; and statutes which are claimed to authorize its exercise are to be strictly construed." The plaintiffs further contended that they were empowered to exercise the rights of eminent domain to obtain water privileges under section 4, chapter 93 of the Laws of 1901. The language of the section upon which they based this claim is: "said railway corporations may take and hold . . . such land as may be necessary for the purposes of installing and maintaining power plants. . . . " "But this provision" said the court "does not authorize street railway corporations to condemn land and water privileges for the purpose of diverting streams and procuring power with which to operate power plants erected or to be erected on their own land. On the contrary, the authority there conferred is limited to taking such land as may be necessary for locating or placing power plants in position for use and maintaining the same." This case, it will be perceived, is very similar in principle to the instant case.

It is argued by the defendants that the flowage act does not meet the needs of public utilities, only in an incidental and inadequate way, and that the act was framed primarily for the benefit of manufacturing enterprises, which are private callings and serve the public only in an indirect or economic sense. The ground upon which the flowage act was upheld as constitutional, was that flow-

age rights taken under it must be employed by those so acquiring them for the public use or benefit. It is elementary that private property cannot be taken by eminent domain for private uses. *Concord Railroad* v. *Greely*, 17 N. H. 47; *Ash* v. *Cummings*, 50 N. H. 591, 612; *Rockingham Light &c. Co.* v. *Hobbs*, 72 N. H. 531; *McMillan* v. *Noyes*, 75 N. H. 258. The act provides that, if in the opinion of the court the erection of a dam is not of public use or benefit, the petition to obtain flowage rights shall be dismissed. P. S., *c.* 142, *s.* 16. And as to the claim of the defendants that the flowage act does not meet the needs of public utilities, it was held in *McMillan* v. *Noyes, supra,* that a hydro-electric company engaged in manufacturing electrical energy, and furnishing it primarily to the public, was entitled to maintain a petition to acquire flowage rights under the flowage act. Consequently this act affords to hydro-electrical companies engaged in manufacturing electrical energy as ample and adequate means of obtaining flowage rights as it does to any other manufacturing concern. If it were decided that public utilities could acquire flowage rights under the Laws of 1911, chapter 164, the law of the state respecting such rights would be in this anomalous situation. Public utilities could obtain flowage rights by paying the actual damages caused by the flowage while all other manufacturing companies engaged in enterprises for the public use or benefit, could only acquire such rights under the flowage act by paying 50 per cent more than the actual damage. P. S., *c.* 142, *ss.* 16, 17. Under the flowage act, if the parties could not agree upon the damages caused by the flowage, either party could petition the court for the assessment of damages. P. S., *c.* 142, *s.* 13. But chapter 164 of the Laws of 1911 does not give to persons whose lands are taken the right to petition to the public service commission to have their damages assessed. Only public utilities and railroads can petition for such assessment of damages. Therefore, if this act supersedes the flowage act, persons whose lands are flowed by public utilities have lost not only the right to recover 50 per cent more than the actual damage caused by the flowage, but they have also lost the right to bring a petition to have their damages assessed. This is a cogent indication that the legislature did not intend to confer upon public utilities the power to acquire flowage rights under the public service commission act.

It is true, as the defendants state in their brief, that many companies under special acts of the legislature have been granted the

power to acquire flowage rights by eminent domain without paying 50 per cent more than the actual damages occasioned by the flowage. These companies, however, have been largely aqueduct companies for the purpose of supplying towns with water, and some of them .were municipal water companies, but the rights granted do not imply the use of water for power. Only a very few of these companies chartered previous to the public service commission act were hydro-electric companies similar to the defendant company. It will be noted that some of the largest companies of this character that have in recent years been granted the right to obtain flowage rights for power by special legislative act, have been required to pay 50 per cent more than the actual flowage damages. Laws 1903, c. 306; Laws 1909, c. 328; Laws 1911, c. 358. Since the passage of the public service commission act in 1911 several public utility companies have been granted by special acts of the legislature power to acquire flowage rights by paying only the actual flowage damages. Laws 1913, cc. 353, 368, 394; Laws 1915, cc. 285, 303. If the position of the defendants is correct, there was no occasion for these companies to seek such rights by special acts from the legislature, and no reason why they should have been granted. As the public service commission act does not confer upon public utilities the power to acquire flowage rights by eminent domain, it does not supersede the flowage act, and the petition of the plaintiffs is to stand for trial in its order, in accordance with the agreement upon which it was transferred.

*Case discharged.*

All concurred.